# E. C. WHITE v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, Appellant.

### In Banc, July 20, 1910.

1. **MASTER AND SERVANT: Protecting Servants' Legal Rights: Garnishment.** Above the master's legal liability he has a moral duty to protect the legal rights of his servant when he alone, under the circumstances of the case, can do so. This moral duty is especially incumbent upon a railroad company when the wages of its trainmen are being seized under writs of garnishment, in violation of the statutes and without actual notice to them, since they are often men of small means, receive small wages, and in the performance of their work are carried hundreds of miles from their homes.

2. **GARNISHMENT: Class Legislation: Immateriality of Class Favored.** If the statute protecting the wages due a defendant from a railroad company from garnishment, until after judgment on the demand against defendant, where the sum demanded is less than $200, is unconstitutional, it is immaterial whether its purpose is to protect the one class or the other—the railroad company or its employees—but where it is assailed as class legislation, it is important to ascertain what class is created, for thereby a legal justification for making the class may be discovered.

3. **——: —— :——: Railroad Companies.** If the purpose of said statute was to create railroad companies into a class, in order that they might be exempted from the burden or annoyance of answering as garnishees in suits for small amounts brought against their employees, it would be unreasonable classification; but, while it incidentally has that effect, that is not its purpose, and it is not unconstitutional on that ground.

   *Held*, by WOODSON, J., dissenting, that the statute in exempting railroad companies from garnishment in such cases extends to them an immunity not guaranteed to any other person or corporation, and is therefore violative of that provision of the Constitution which declares that the Legislature shall not enact any law "granting to any corporation, association or individual any special right, privilege or immunity."

4. **——: ——: Railroad Employees.** The statute protecting the wages of employees of a railroad company from garnishment, where the sum demanded is less than two hundred dol-

lars, until after judgment against the employee, does not create an unreasonable classification of wage-earners. The statute looks to the fact that many railroad employees are often away from home, and while absent may be sued by publication and their wages seized without their knowledge, and it was designed to prevent an abuse of the process of courts. Without the statutory provisions a creditor would have no right to garnish the wages of his debtor until after he had obtained judgment against him; and the statute granting the right may direct how and to what extent the process may be used, and a creditor using the process cannot complain of the restrictions and conditions imposed by the very statute giving him the right. The exception is reasonable, and the General Assembly had power to make it.

*Held,* by WOODSON, J., dissenting, that the statute was enacted primarily as a benefit to railroad companies, and is therefore unconstitutional, since it grants to them an immunity and privilege not granted to other corporations or individuals; but if it were enacted for the benefit of railroad employees it is nevertheless unconstitutional, for it grants to them immunities, privileges and benefits denied to other employees.

5. ———: ———: Sec. 3448: Ignoring Writ. The effect of Sec. 3447, R. S. 1899, is to forbid the issuance of a writ of garnishment to a railroad company, in a suit against its employee, where the amount demanded is less than $200 and no judgment has been obtained against the employee, and section 3448 authorizes the railroad company to ignore the writ of garnishment if one, in violation of the express terms of section 3447, should be served on it, and the General Assembly violated no provision of the Constitution when it said the railroad company may ignore a writ which the law has forbidden a court to issue.

6. ———: ———: Incidental Protection to Railroad Company: Against Two Suits for Same Debt. If a statute aimed to protect employees from an abuse of the court's process, should also afford the railroad company protection from twice being sued for the same debt, once in another State and again in this, it would be no reproach to the statute, and would not authorize the court to hold it was a classification in favor of railroad companies. But no such purpose can be gathered from Sec. 3447, R. S. 1899.

7. ———: ———: ———: ———: Full Faith and Credit. And besides, under section 1 of article 4 of the U. S. Constitution, requiring each State to give "full faith and credit to the judicial proceedings of every other State," a judgment of a court of competent jurisdiction in another State would be a perfect defense to a subsequent suit in this State for the same debt.

8. **CLASS LEGISLATION: Rule.** Class legislation is not an offense against the Constitution, either State or Federal, if it is based on reason and if it includes all persons or corporations coming within the reason. It is impossible to make all laws applicable to all persons or all corporations; classes in fact exist, and laws must be made to apply to them as classes, and if there is reason why a law should be made to apply to a particular class the General Assembly has power to so apply it, unless it is otherwise forbidden by the Constitution to do so.

9. **———: Class Within a Class: Arbitrary: Garnishment: Employees: Wages $200 or less.** The Legislature may recognize a class within a class, and enact a law applicable only to the interior class, and if the statute embraces all those who come within its reason it is not obnoxious to the Constitution. The Garnishment Act of 1899, forbidding the garnishment of the wages of employees of a railroad company, where the demand is less than $200, until the demand has been reduced to a judgment against the employee, reaches every employee within the interior class, and is not an unreasonably arbitrary classification. The purpose of the exemption, apparent on the face of the statute, is to protect an employee from an abuse of the process of garnishment on a claim too small to justify him in leaving his post of work and coming a distance to make his defense, and drawing a line that would embrace such employees was not unreasonably arbitrary, since it has both reason and justice to support it.

———: ———: ———: ———: **Creditors.** Nor does the statute create an arbitrary class among creditors, withholding the writ of garnishment from all whose demands are less than $200 and allowing it freely to those whose demands are $201 or more. The purpose of the statute was to protect from garnishment, before judgment, the wages of small wage-earning railroad employees, and the line had to be drawn somewhere to make a valid enactment, because if it had protected the wages of all employees of railroads, it would have been invalid, its justice and reason thereby failing, and if in designating the class of such employees to which the reason of the law applies, certain creditors are incidentally given an advantage, that does not destroy the act.

*Held,* by WOODSON, J., dissenting, that the statute contravenes that part of the Fourteenth Amendment which declares that no State shall make or enforce any law which denies "to any person within its jurisdiction the equal protection of the laws," since it arbitrarily divides creditors into two classes, and gives to all whose demands exceed

230 Sup—19

$200 the writ of garnishment before judgment as a means of collecting their demands, and denies it to all other creditors until their demands are reduced to judgment.

Appeal from Pettis Circuit Court.—*Hon. Louis Hoffman*, Judge.

REVERSED.

*Geo. P. B. Jackson, Joseph M. Bryson* and *Lee W. Hagerman* for appellant; *R. T. Railey amicus curiae.*

(1) The objection that the law is violative of section 53 of article 4 of the Constitution of Missouri, prohibiting the enactment of any local or special law "granting to any corporation, association or individual any special or exclusive right, privilege or immunity" is without force for the reason that that provision of the Constitution was not leveled against laws which apply to a portion of the people of the State as a class. (2) The only ground upon which the statute can be assailed, if at all, is that it is violative of section 30 of article 2, providing that "no person shall be deprived of life, liberty or property without due process," or of the Fourteenth Amendment to the Federal Constitution, providing as above and that no law shall be passed by any State denying to any person equal protection of the laws. The law is not violative of either the Federal or State Constitution in this respect, because the effect of the statute in question is to make a class of people in the State of Missouri, all of whom are entitled to the same rights, subject to the same liabilities, to be controlled by the same kind of proceedings, and all subject to the same limitations. Daggs v. Insurance Co., 136 Mo. 380, and 172 U. S. 557; Railroad v. Mackey, 127 U. S. 205; Railroad v. Beckwith, 129 U. S. 26; Railroad v. Humes, 115 U. S. 512; Soon Hing v. Crowley, 113 U. S. 703; Barbier v. Connolly, 113 U. S. 27; Railroad v. Matthews, 174 U. S. 96; Railroad v. Paul, 173 U. S. 404; Hamman

v. Coal Co., 156 Mo. 232; Humes v. Railroad, 82 Mo. 221; Burkholder v. Trust Co., 82 Mo. 572; Steele v. Railroad, 84 Mo. 57; Phillips v. Railroad, 86 Mo. 540; Perkins v. Railroad, 103 Mo. 52; Briggs v. Railroad, 111 Mo. 168; State ex rel. v. Wofford, 121 Mo. 61; State ex rel. v. County Court, 128 Mo. 427; State ex rel. v. Washburn, 167 Mo. 680; Powell v. Sherwood, 162 Mo. 605; Cambron v. Railroad, 165 Mo. 543; State v. Whittaker, 160 Mo. 59; State v. Etchman, 189 Mo. 648; State ex rel. v. Messerly, 198 Mo. 351; O'Connor v. Transit Co., 198 Mo. 622; Coffey v. Carthage, 200 Mo. 616. (3) Garnishment is not an original or independent suit. It is simply an ancillary proceeding, in aid of the original cause. It has for its purpose the sequestration of the debtor's property in order that it may be held *in custodia legis* pending the litigation. Tinsley v. Savage, 50 Mo. 141; Fletcher v. Wear, 81 Mo. 530; Chicago Herald v. Bryan, 195 Mo. 595; Millinery Co. v. Johnson, 130 Mo. App. 331; State ex rel. v. Hughes, 135 Mo. App. 134. Garnishment proceedings are purely creatures of statute. They are in derogation of the common law, and should be strictly construed. Haley v. Railroad, 80 Mo. 113; Howell v. Sherwood, 213 Mo. 576; Bank v. Barnett, 98 Mo. App. 479. Whenever a right of action is given by statute, which did not exist at the common law, it should be strictly construed, and only those named as beneficiaries therein should be construed to come within the provisions of said statute. In other words, where the Legislature grants a right of action which did not exist at common law, it has the undoubted right to name the terms and conditions on which the proposed beneficiary shall act in reference to same. He must take the remedy as given by the Legislature, or he is not entitled to proceed thereunder by accepting a part of its benefits. Oates v. Railroad, 104 Mo. 518; Gilkeson v. Railroad, 222 Mo. 185; Clark v. Railroad, 219 Mo. 539; Millar v. Railroad, 216 Mo. 105; Broadwater v. Railroad, 212 Mo. 437;

Strottman v. Railroad, 211 Mo. 227; Bates v. Railroad, 205 Mo. 493; Packard v. Railroad, 181 Mo. 421; Barron v. Lead & Zinc Co., 172 Mo. 228; Hennessy v. Brewing Co., 145 Mo. 113; Barker v. Railroad, 91 Mo. 86; Gibbs v. Hannibal, 82 Mo. 149; McNamara v. Slavens, 76 Mo. 330; Proctor v. Railroad, 64 Mo. 112. Applying the principles of law enunciated by the authorities, it is clear that said sections 3433, 3435, 3447 and 3448 should be construed together, and if so construed they are not in conflict with any provisions of the Federal or Missouri Constitutions. The creditor, in a case of this character, cannot accept the benefits of a part of the garnishment law and repudiate the right of the Legislature to withhold or modify those rights which have already been conferred upon him. Hart v. Handlin, 43 Mo. 174; Jarrett v. Morton, 44 Mo. 275; Estes v. Reynolds, 75 Mo. 565; Dow v. Elec. Co., 31 Atl. (N. H.) 22; Elec. Co. v. Dow, 166 U. S. 489; Gano v. Railroad, 87 N. W. 719; Railroad v. Gano, 190 U. S. 557; Commissioner v. Railroad, 89 N. W. (Mich.) 967; Railroad v. Commissioner, 193 U. S. 29; Scholey v. Rew, 90 U. S. 350; Baldwin v. Kouns, 81 Ala. 272; Otto v. Long, 77 Pac. 885; Pitkin v. Springfield, 112 Mass. 509; Deverson v. Railroad, 58 N. H. 129; Hart v. Folsom, 70 N. H. 213; Railroad v. Railroad, 35 S. E. (S. C.) 555; Moore v. Napier, 42 S. E. (S. C.) 997; Purcell v. Conrad, 5 S. E. (Va.) 549.

*E. C. White* and *Barnett & Barnett* for respondent.

(1)    Section 3447 is unconstitutional and void. It is repugnant to the Fourteenth Amendment to the Constitution of the United States, which prohibits a State from denying to its citizens the equal protection of the laws, in that it arbitrarily undertakes to separate wage-earners who are in the employ of a railroad corporation from other classes of people and even from other wage-earners, and provides for them a different rule of action and a different protection. It protects

such railroad wage-earners from garnishment in sums
of $200 or less until after judgment shall have been
recovered, even where a ground of attachment exists,
while it does not afford such protection to any other
class of people or to any other wage-earners. It is
not the equal protection of the law which the Constitu-
tion guarantees. In re Flukes, 157 Mo. 125; Niagara
Falls Insurance Co., 110 Fed. 823; People v. Construc-
tion Co., 175 N. Y. 84; Mathews v. People, 202 Ill.
389. (2) Said section is also in conflict with sec. 53,
art. 4, of the Constitution of Missouri, which provides
that "The General Assembly shall not pass any local
or special law granting to any corporation, association
or individual any special or exclusive right, privilege
or immunity." This section clearly grants an immunity
from garnishment not granted to others. In re Flukes,
157 Mo. 130. Said section is also in conflict with sec.
30, art. 2, and sec. 4, art. 2 of the Constitution of Mis-
souri. In re Flukes, supra. (3) This statute is not,
as appellant contends, an exercise of legislative judg-
ment or discretion and is not a police regulation. It is
not an attempt to regulate the railroad business, but
is an arbitrary separation of different classes of debt-
ors and different classes of wage-earners, and provides
that wage-earners who labor for railroad corporations
are exempt from garnishment under attachment, while
other laborers are subject to garnishment under such
circumstances—thus making an unjust discrimination,
and denying the equal protection of the laws, and
granting an immunity to railroad employees not grant-
ed to others. Railroad v. Matthews, 174 U. S. 104;
State v. Montgomery, 94 Me. 192; Ex parte Virginia,
100 U. S. 367; Black v. Seal, 6 Honslow (Del.) 541;
Pearson v. Portland, 69 Me. 278; Northern Pacific, 3
Pac. 134; Templer v. Examiners, 131 Mich. 254. The
classification must not be arbitrary and without rea-
sonable grounds on which it may be based. Bessette
v. People, 193 Ill. 334; Harmon v. State, 66 Oh. St.

249; Goodale v. Suell, 62 S. C. 516; Stratton v. Morris, 89 Tenn. 497; Black v. State, 113 Wis. 205; Cotton v. Stock Yards Co., 183 U. S. 79; Morgan v. Trust Co., 170 U. S. 283; Strauder v. West Virginia, 100 U. S. 303.

VALLIANT, J.—Plaintiff brought suit by attachment in a justice's court against one York on a promissory note for $58.40 and interest; the railroad company was summoned as garnishee; there was no personal service of process on York, he was brought in by publication only on the constable's return of *non est,* no appearance for him was entered, and nothing of his was reached by the attachment except the debt which the railroad company, the garnishee, owed him. The garnishee by its answer to the interrogatories admitted that it was "indebted to the defendant E. P. York, a married man, the head of a family and a resident of the State of Missouri in the sum of $76.90, which amount is for services rendered by defendant to this garnishee during the month of October, 1903, and will be due and payable on or about the 1st day of November, 1903; said sum is for wages earned during the thirty days next preceding its becoming due." The garnishee's answer then stated that no judgment had been rendered against the defendant, that the amount claimed by plaintiff being less than two hundred dollars, and the amount the garnishee owed defendant being for wages owing him as an employee of the railroad company, it was not subject to garnishment, but was exempt therefrom under the provisions of sections 3447 and 3448, Revised Statutes 1899. There was no denial of the garnishee's answer. The justice rendered judgment against the garnishee for $76.90, and the latter appealed.

When the cause reached the circuit court the plaintiff filed a motion for a judgment against the garnishee on the admission of the indebtedness in its answer, not-

withstanding the provisions of sections 3447 and 3448, Revised Statutes 1899, which plaintiff alleged were unconstitutional because they were in conflict, first, with certain sections of the State Constitution, to-wit, section 53, article 4, "The General Assembly shall not pass any local or special law" in reference to certain subjects specified, among which is "granting to any corporation, association or individual any special or exclusive right, privilege or immunity;" second, section 30, article 2: "No person shall be deprived of life, liberty or property without due process of law;" third, section 4, article 2: "All persons have a natural right to life, liberty and the enjoyment of the gains of their own industry." Also in conflict with the Fourteenth Amendment to the Federal Constitution, "Nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." The circuit court sustained the motion and rendered judgment against the garnishee, holding that the statute in question was unconstitutional; from that judgment the garnishee prosecutes this appeal.

There is no dispute of the facts stated in the garnishee's answer; if the sections of the statute in question are in violation of any of the provisions of the Constitution, State or Federal, set out in the motion, the judgment should be affirmed; if those sections were the result of a lawful legislative power, the judgment should be reversed.

The two sections of the statute, being sections 3447 and 3448, Revised Statutes 1899, Ann. Stat. 1906, p. 1891, now sections 2427 and 2428, Revised Statutes 1909, are as follows:

"Sec. 3447. That hereafter no garnishment shall be issued by any court in any cause where the sum demanded is two hundred dollars or less, and where the property sought to be reached is wages due the defendant by any railroad corporation, until after

judgment shall have been recovered by the plaintiff against the defendant in the action.

"Sec. 3448. No railroad corporation shall be required to make answer to any interrogatories propounded to it, in any action against any person to whom it may be indebted on account of wages due for personal services, nor shall any default or other liabilities attach because of its failure to so answer in such cases, where a writ of garnishment was issued or served in advance of the recovery by the plaintiff against the defendant, in any action for two hundred dollars or less; and any judgment rendered against any railroad corporation for its said failure or refusal to make answer to any garnishment so issued or served before the recovery of final judgment in the action between the plaintiff and defendant in the cases mentioned in section 3447, shall be void, and any officer entering said judgment or who may execute the same shall be taken and considered a trespasser and in addition thereto may be enjoined by any court having jurisdiction."

Whilst there are three sections of the State and one of the Federal Constitution violated by this statute, according to the motion filed by the plaintiff in the circuit court, yet, according to the oral argument and brief in his behalf in this court, the whole contention is narrowed down to the proposition that it is arbitrary class legislation. According to respondent's brief the statute violates the Fourteenth Amendment "in that it arbitrarily undertakes to separate wage-earners who are in the employ of a railroad corporation from other classes of people and even other wage-earners;" and it violates section 53 of article IV, because it grants to the railroad company "immunity from garnishment not granted to others." Just how it deprives the plaintiff of his property without due process of law or how it deprives him of his natural right to life, liberty and the gains of his industry, there is no suggestion in his brief

and we perceive no such possible effect. But the argument is, it is class legislation, it shuts the plaintiff off from pursuing his writ of garnishment against an employee of a railroad company when under like circumstances he could attach the wages of an employee of any other kind of corporation or of an individual; it shuts him off from running the garnishment to recover his small debt, whereas a creditor with a debt of over two hundred dollars could go in and recover; and it shuts him off from pursuing a railroad company, whereas, if it were any other kind of employer the process of garnishment could be used. That is the epitome of the argument.

The class marked out for favor in the statute is the class of railroad employees covered by its terms; incidentally the railroad company receives the favor of freedom from the annoyance which constant calls to answer as garnishee would entail, but the persons really protected are the employees whose wages, when they are absent or have no notice of a suit, cannot be attached. Section 3447 says that when the amount sought to be recovered from the employee is two hundred dollars or less his wages shall not be touched by garnishment until there has been a judgment for the amount against him; of course there can be no judgment against him until he has been served with summons. The statute means that the process of garnishment should be withheld until the employee is brought into court and is allowed to make his defense, if any he has, and a personal judgment rendered against him. The next section, 3448, is but a corollary to the former, and is designed to secure its performance, to render more certain the accomplishment of its purpose.

It is earnestly argued that the statute is vicious class legislation because it is in the interest of railroad corporations, shielding them as a class from the process of garnishment, while all other corporations

and individuals are liable to that process. And to ex-
emplify this position, attention is called to the fact that
it is the railroad company and not the employee that is
prosecuting this appeal, and not only that, but attor-
neys of other railroad companies have asked and ob-
tained leave to come in as *amici curiae* and file briefs
and make oral arguments to sustain the statute. The
railroad company is the only party to this suit who
had the right to appeal or bring the cause to this court,
because it is the only party against whom or against
which the judgment was rendered. But aside from
that, it seems like a narrow view to attribute no other
motive than that of a pecuniary interest to this rail-
road and the other railroad companies who have shown
an interest in this case. The only selfish interest a
railroad company could have in the matter is to be
freed from the annoyance of being constantly called
into court to answer as garnishee; its real pecuniary
interest is but little if any. If it owes the employee it
can bring the amount into court and be paid out of the
fund in its hands for the expenses it has incurred for
answering; if it owes nothing, or if the amount it owes
is not sufficient to pay what the court allows for the
expense of answering, the garnishee recovers judgment
therefor from the attaching creditor. In the contem-
plation of the law of garnishment the garnishee is not,
in the first instance, considered as an adverse party
in the litigation, he is a disinterested stakeholder, ready
to pay what he owes, and to pay it to whom the court
decrees; he becomes an adversary only when a dispute
arises over his answer. But the interest taken by the
railroad companies in the subject of this suit is not
to be attributed alone to their desire to avoid annoy-
ance. It is the duty of the master to protect his serv-
ant. Perhaps, in a case like this, such is not the
master's duty to the extent that he would be liable
if he failed to give such protection, but above his
legal liability he has a moral duty to protect his serv-

ant when it comes in his way to do so, which, whether he can be compelled to perform it or not, is of sufficient consideration to justify his conduct when he does perform it. This moral duty, if we call it nothing else, is especially incumbent on railroad corporations. Their employees, particularly those composing their train crews, are often men of little means, small wages, and in the performance of their work are carried hundreds of miles away from their homes. They are more helpless in many respects than men enaged in other kinds of business; they especially need protection, and if in such case the master will not protect his servant, who will protect him? We can see in the subject now under consideration a blended interest of master and servant with the servant's share in the interest alone likely to suffer if the master withholds his protection.

It is said that if the statute is unconstitutional it is immaterial whether its purpose be to protect one class or another, the railroads or their employees, and that is so. But when the validity of the statute is assailed on the ground that it is class legislation, it is important to ascertain what class is created, so that we can see whether there was legal justification for making the class. Statutes have been enacted and held to be valid which make railroad companies a class, but the same reason that would justify making railroads a class would not always justify bringing other concerns into that class. Our Fellow-Servant Statute of 1897 is an example of that kind of legislation. And the statute giving railroad companies the power to condemn a right of way one hundred feet wide through your land creates railroad companies into a class for that purpose. But there were good reasons for that classification, reasons which would justify the imposing of the burden upon the class in the one statute, and the conferring of the power in the other; reasons that would not justify the inclusion of other concerns in either of those classes.

In the case at bar if the purpose of the statute in question was to create railroad companies into a class, to exempt them from the burden or from the inconvenience of answering as garnishees, no one would undertake to defend it as a reasonable classification. But who will undertake to say that the General Assembly intended by this act to create railroad companies into a privileged class, to exempt them from the common burden borne by everybody else? When in the legislative history of this State has the General Assembly ever manifested such partiality to railroad companies as a class, partiality in which there was no purpose but to favor the class, granting to them a special privilege without any conceivable benefit to the public? On the other hand when we think of the employees, their peculiar helpless condition, in the predicament contemplated by this statute, we see a very good reason for the classification. A man at home, or whose place of business is near his home, can attend the justice's court when he is sued and, either with or without an attorney, defend against an unjust suit. But if an unfair plaintiff has a small claim against a brakeman on a freight train, against which claim he knows there is or may be a good defense, he may watch a time when the brakeman is gone, give constructive notice by publication, seize his wages and thus obtain an unconscionable advantage. Even if the publication was brought to the notice of the railroad employee, when perhaps he was five hundred miles away from home and could not leave his post of duty without sacrificing his position, it is easy to conceive how he would submit to wrong rather than undertake the expense and trouble of defending the suit for the small amount involved, small perhaps in comparison to the expense and trouble, though not small in comparison to his wages. The law contemplates that a man can ordinarily be found by the sheriff or constable in the county in which he lives, and if he cannot be

found the law provides for constructive notice to him as to one who absconds or conceals himself to avoid the writ, and, as a general rule, that is fair. But is it fair to this class of men? are they to be put in the category of men absconding or hiding from the sheriff or constable? or if the General Assembly should undertake to give them as a class certain exemption from that condition, can we say that it is arbitrary classification?

The record in this case illustrates what advantage may be taken of a railroad employee but for this statute. The defendant in this case is a resident of this State, then why was the time to sue chosen when he was absent, and when only constructive notice, which in fact is often no notice, could be given? So far as this record shows, this man knew nothing of this suit, but if this law will not protect him his wages are to be gathered in by the adroit plaintiff whether he owed the debt or not. This case illustrates only one aspect of the condition to which the statute was designed to apply. It applies as well to a non-resident railroad employee as to a resident. A man living in Texas having a disputed claim against a railroad trainman who lives in the same town may send his claim to Missouri where it is likely the defendant may never be, and institute suit by attachment, and the defendant never hear of it until his pay day comes and he finds that his wages have been appropriated. Is it possible the law-making power of this State cannot regulate the process of the courts of the State to prevent such an abuse of the law?

Without the statutory provision of garnishment a creditor would have no right to seize the wages of his debtor until after he obtained judgment on his debt; the statute granting the right may direct how and to what extent it may be used, and a person using the process given him by the statute has no right to complain of the restrictions or conditions imposed

by the very same law that gives him the right. We do not mean to imply that a statute evidently designed to give one class of creditors the property of their debtor and withhold it from another class would not be obnoxious to the Constitution, State and Federal, but we do say that in giving such process to creditors as our garnishment statutes give, it is in the power of the General Assembly to make reasonable exceptions and the creditor using the process has no right to complain of the exception.

The statute in question, designed as an amendment to the statute regulating the process of garnishment, was enacted in 1899. [Laws 1899, p. 221.] It consists of two sections only, the first of which, section 3447, Revised Statutes 1899, now section 2427, Revised Statutes 1909, is in these words: "That hereafter no garnishment shall be issued by any court in any cause where the sum demanded is two hundred dollars or less, and where the property sought to be reached is wages due the defendant by any railroad corporation, until after judgment shall have been recovered by the plaintiff against the defendant in the action."

The whole force and effect of the act is contained in that section; if the second section had been omitted entirely the purpose of the act would have been accomplished completely. The effect of the first section was to forbid the issuance of a writ of garnishment in such case. Such a writ issued in violation of the terms of that section would be an illegal writ, under which no right could be acquired, no obligation imposed; the party protected was the man whose wages were thereby shielded, the class created was the class composed of such men. The law which exempts to a servant his wages or shields his wages from legal process, cannot be said to be a law for the benefit of the master.

The second section, section 3448, Revised Statutes 1899, now section 2428, Revised Statutes 1909, is de-

signed only to aid in the practical accomplishment of the purpose contained in the first section. It authorizes the railroad company to ignore a writ of garnishment if one, issued in violation of the express terms of the first section, should be served on it. There is just this much protection to the railroad company in that provision and no more, to-wit, but for that provision the railroad company would be bound to answer the writ or failing let a judgment by default go against it. But surely it cannot be said that the General Assembly violates the Constitution when it says that the railroad company may ignore a writ which the law has expressly forbidden to issue. If it be said that the exemption applies only to railroads, the answer is, it is against railroads only that the writ in such case can go. The wages of a servant can be reached only by garnishing the master. We are satisfied that the class intended to be benefited by the act was of railroad employees, that the railroad companies are only relatively concerned and if protected it is so only incidentally, and in furtherance of the protection designed for the employees. And we are also satisfied that the well-known conditions that surround the employees of the railroad companies are sufficient to justify the General Assembly in making a class of them for the purpose indicated.

It is suggested that but for this statute a resident employee of the railroad company whose wages are exempt from execution or attachment, might be sued by attachment in another State through which the railroad ran, his wages be there seized by garnishment and the company be compelled by judgment to pay the same to the plaintiff in that suit, and thereafter the employee could sue here and recover, thus the railroad company would be subject to two judgments for the same debt, *ergo* this statute is for the benefit of the railroad company. If the statute, although aimed to protect the employees, should incidentally afford the

railroad companies protection from such a wrong, it would be no reproach to the statute. But no such purpose can be gathered from the reading of the statute, and besides it confers no such protection. It does not prevent a creditor suing the employee in another State and there seizing his wages by garnishment, nor does it prevent the employee from afterwards suing for his wages at his own home in this State. But in such case, independent of this statute, the judgment of the court in the other State, if it was a court of competent jurisdiction, would be a perfect defense to the subsequent suit here, by force of section 1, article 4, of the Federal Constitution, requiring each State to give "full faith and credit to the . . . judicial proceedings of every other State."

The power of the General Assembly to enact class legislation has so often been considered by this court that we deem it necessary now to do no more than to refer to some of the cases. The well established doctrine of this court on that subject is that class legislation is not an offense against the Constitution of the State or of the United States if it is based on reason, and if it includes all persons or corporations coming within the reason. It is impossible to make all laws applicable to all persons or corporations; classes in fact exist, and the laws must be made to apply to them as classes. The General Assembly does not really create the class, although we usually speak of it in that way; the class exists by its very nature of inherent conditions, and the lawmaker recognizes the fact and makes the law to suit. If there is reason why a law should be made to apply to a particular class the lawmaking department of the State government has authority to make it unless it is otherwise prohibited by the Constitution. [Humes v. Railroad, 82 Mo. 231; Daggs v. Ins. Co., 136 Mo. 382; Geist v. St. Louis, 156 Mo. 647; Hamman v. Coal Co., 156 Mo. 232; State ex rel. v. Henderson, 160 Mo. 216.] Those are a few of

the decisions on this subject, but are not all that have been cited by the learned counsel for appellant, as reference to their briefs will show, but they are sufficient. Decisions of the Supreme Court of the United States are also cited to the same effect and answer respondent's contention in reference to the Federal Constitution.

Respondent relies with confidence on the decision of this court in In re Flukes, 157 Mo. 125. In that case the Legislature, in section 2357, Revised Statutes 1899, Ann. Stat. 1906, p. 1451, had undertaken to make it a misdemeanor for any person holding a claim for a debt owing by a person resident in this State to send it out of the State for the purpose of instituting suit on it in the foreign jurisdiction, and there attaching by process of garnishment against the debtor's employer the wages due him when the employer was a resident of this State, and could be served with process here. In that statute the Legislature was making an effort to extend its arm across the State boundary line and prevent a creditor from using the courts of another State for the collection of his debt. There was some discussion of the class feature of the statute, but the decision really turned on the point that the statute attempted to abridge the right of the citizen under the Federal Constitution to go anywhere he chose in the United States and institute his suit, without being subject to indictment and punishment.

It is argued that conceding the railroad employees constitute a class justifying special legislation in their behalf, this statute is bad because it does not embrace all railroad employees. If the reasons for class legislation as above discussed are observed the Legislature might recognize the existence of a class within a class; for a class within a class is but a class, and it may be as well marked as the larger class out of which it is formed—and if the statute embraces all

those who come within its reason it is not obnoxious to the Constitution. The argument is that this statute reaches only those railroad employees whose debts amount to two hundred dollars or less, and that drawing the line at that maximum figure is arbitrary. If that fact creates a class within a class it cannot be denied that the statute reaches everyone within that interior class. In point of fact the statute applies to every railroad employee who is sued by attachment for a sum not exceeding two hundred dollars. It was evidently the purpose of the Legislature to provide for cases when the amounts sued for were so small that the defendants could not afford to abandon their posts of duty and come at a great distance and expense to defend the suits. If that was the purpose of the law the lawmaker had to draw the line at some point to designate what was considered a small amount; and wherever the line might have been drawn it would have been subject to the same criticism that is now made. If the line had been drawn at twenty-five dollars or fifty dollars, it would not have protected one who was sued for twenty-six dollars or fifty-one dollars.

If the Legislature had authority to pass a statute affording protection to the class of persons named, it had the authority to draw the line and the courts have no authority to question the wisdom of their demarkation. A statute designed to shield the wages of a railroad employee without limit as to the amount sued for, shielding the salaries of the big as well as the wages of the little, could not stand, because there would be no reason or justice on its face. But a statute aimed to protect an employee from an abuse of the process of garnishment on a claim too small to justify him in leaving his post and coming a distance to make his defense has both reason and justice to support it; in fact the statutes concerning garnishments, without this provision, would be a weapon that could be used to great injustice, and we doubt not that it was to prevent that

abuse that this act was passed. We must remember that this act does not deprive the creditor entirely of the writ of garnishment in such case, but only postpones him until he gets a judgment on his claim. It is argued that this statute applies to all railroad employees regardless of their station or the amount of their wages, the line being drawn only at the amount of the debt sued for, and that therefore it cannot be said that it was aimed to cover only the small wage-earner. That is an argument on the letter rather than on the spirit of the law. *Qui haeret in litera, haeret in cortice.* Who can read this statute without seeing that it was to protect that class of small wage-earners whose calling carried them away from home, and who can reflect on it without seeing that that is its practical effect? If the statute had gone on to specify the amount of wages the man was to earn in order to come within its terms, the same criticism that is now made in reference to the amount of the debt sued for would be made in reference to the amount of wages specified; if the statute drew the line at sixty dollars a month the complaint would be that it excluded from its protection the man whose wages were sixty-one dollars a month. If the lawmaker thought that a station agent or a clerk in an office, or a man whose position was high enough to command a large salary, was not as apt to be subjected to the abuse that the statute was aimed to correct as the one whose duties called him away from home and for that reason left the statute more general than it might have been, we cannot say that the conclusion was unreasonable, nor can we condemn the statute because possibly it might cover a case not contemplated.

When a statute is designed to correct a well-known evil there is no use to encumber it with words to exempt from its effect a condition which though possible is unlikely and which would rarely if ever occur.

White v. Railroad.

It is argued also that this statute by an arbitrary line creates a class of preferred creditors, allowing those whose claims are for two hundred and one dollars or more free to sue out a writ of garnishment, while excluding those whose claims are two hundred dollars or less. Whatever may be said as to the effect of the statute, it certainly cannot be claimed that its purpose was to give one class of creditors a privilege over another class. It is as difficult to imagine that the General Assembly had in mind the intention to create a preferred class of creditors, drawing the line at two hundred and one dollars, as it is to imagine the intention to create a particularly preferred class consisting alone of railroad companies. The purpose of the statute was not to prefer a class of creditors or a class of railroads, and if the effect is to give an incidental preference to creditors whose claims are more than two hundred dollars, that consequence cannot defeat the statute, if its purpose was to accomplish an object which the General Assembly had a right to accomplish and in the main does accomplish. As already said there would be neither reason nor justice in withholding the writ of garnishment from all creditors regardless of the amount of their claims and thus shield the large salaries as well as the little wages, but there is both reason and justice in withholding from the creditor, whose claim is so small as to not justify the defense, involving abandonment of post as well as expense, the right to seize the wages of the debtor until his claim is in judgment, and as also already said, if the aim was to cover only such small cases, the line had to be drawn somewhere and it was for the lawmaker to say where.

This statute is not designed to shield a railroad employee from the payment of an honest debt, but only to protect him from the abuse that might be made of the writ of garnishment to his injury in his absence.

It gives him a chance to be heard before his wages are taken, a chance he would be less likely to have, on account of the nature of his daily work, than persons engaged in other business. We hold that sections 3447 and 3448, Revised Statutes 1899, now sections 2427 and 2428, Revised Statutes 1909, are not obnoxious to any of the mandates of either the State or the Federal Constitution.

The judgment is reversed. *Fox, C. J.,* and *Lamm* and *Graves, JJ.,* concur; *Gantt* and *Woodson, JJ.,* dissent in an opinion by *Woodson, J.; Burgess, J.,* not sitting.

## DISSENTING OPINION.

WOODSON, J.—This is a suit by attachment instituted by plaintiff against E. P. York, before a justice of the peace in Pettis county, on a note for $58.40, executed by the latter to one Lukenbill, who endorsed it to plaintiff. The defendant railroad company was duly served as garnishee in the cause. The defendant, York, was a resident of this State, but personal service could not be had upon him; and in due time and in proper form he was served by publication, as was authorized by the statute in such cases.

The garnishee answered and admitted that he was "indebted to defendant, York, a married man, the head of a family and a resident of the State of Missouri, in the sum of $76.90, which amount is for services rendered by defendant to this garnishee during the month of October, 1903, and will be due and payable on or about the 1st day of November, 1903, said sum is for wages earned during the thirty days next preceding its becoming due.

"Further answering, this garnishee says that it is summoned into court by virtue of a summons in garnishment based upon a writ of attachment, that a judgment has never been rendered against the defendant,

E. P. York, in favor of E. C. White, and that the sum sought to be reached by this proceeding is less than two hundred dollars and is wages earned by the defendant, York, as an employee of this garnishee, a railroad corporation; and that under the provisions of section 3447, Revised Statutes 1899, said railroad company is not subject to garnishment in this case; wherefore, having fully answered said garnishee prays that it be discharged with its costs, and that it be allowed five dollars for its attorney fee and its expenses herein.''

The justice rendered a judgment by default in favor of the plaintiff and against the defendant, York, for the sum of $92.76, and against the garnishee, the railroad company, for the sum of $76.90, the amount owed by it to York.

The garnishee duly appealed the cause to the circuit court. There was no dispute as to the facts of the case. It was virtually conceded that they were as stated in the pleadings. Judgment was again rendered in favor of the plaintiff and against the defendants. From this judgment the garnishee, the railroad company, appealed to this court.

I. The validity of this judgment depends upon the constitutionality of sections 3447 and 3448, Revised Statutes 1899. If constitutional, then the judgment should be reversed; if unconstitutional, then it should be affirmed.

Counsel for respondent contends that said sections violate the clause of section 53 of article 4 of the Constitution, which provides that the Legislature shall not pass any law ''granting to any corporation, association or individual any special or exclusive right, privilege or immunity.''

In order to determine whether or not the statutes in question grant any special privilege, or immunity from garnishment, to the appellant, or special privilege

to any creditor or railroad employees, we must first ascertain who are subject to garnishment under the general garnishment laws of this State, and who may avail themselves of them.

Section 3433, Revised Statutes 1899, governs this matter, and reads as follows:

"All persons shall be subject to garnishment, on attachment or execution, who are named as garnishees in the writ, or have in their possession goods, moneys or effects of the defendant not actually seized by the officer, and all debtors of the defendant, and such others as the plaintiff or his attorney shall direct to be summoned as garnishees."

By that section of the statutes, all persons are subject to garnishment who are, first, named as garnishees in the writ; or, second, have in their possession goods, moneys, or effects of defendant not seized; third, all debtors of the defendant; and fourth, all such persons as the plaintiff shall direct to be summoned as garnishees.

That section is very sweeping and comprehensive in its provisions. It authorizes garnishment proceedings against all persons named in this writ of garnishment, and all persons who have in their possession any goods, moneys or effects, of the defendant in the suit, and all persons who are indebted to such defendant. In other words, it includes every person in the State against whom a judgment in garnishment proceedings could be rendered. It is general and uniform in its operation throughout the entire State, and exempts no one therefrom, not even railroad companies, as is shown by the numerous judgments which have been rendered against them in such proceedings, and affirmed by this court.

But how about sections 3447 and 3448? They exempt railroad companies from garnishment proceedings in all cases where the amount demanded of the defendant in the suit does not exceed two hundred

dollars, without the claim has been first reduced to a judgment. That immunity is not granted or extended to any other "corporation, association or individual in the State," nor is it extended to them in any case where the sum sought to be recovered against the defendant in the case exceeds the sum of two hundred dollars. If that is not a special privilege or immunity granted to the railroad companies of the State, then those words as used in the said constitutional provision have lost their meaning.

That is axiomatic. The mere statement of the proposition shows that these statutes grant to railroad companies, and none other, immunity from garnishment where the amount of the indebtedness to the plaintiff does not exceed two hundred dollars. It would be just as absurd, to my mind, to undertake to argue that proposition as it would be to argue that two and two are four.

Counsel for appellant attempt to escape the effects of this conclusion by arguing that the immunity so granted by said statutes to railroad companies was in reality granted for the benefit of the railroad employees. I do not so understand it, for the reason shown on their face that they were enacted primarily for the benefit of the railroad companies themselves, and only incidentally do they benefit their employees. But even that would be just as obnoxious for the reason that the railroad employees under that provision of the Constitution are no more entitled to special privileges, benefits or immunities than are the railroads themselves.

In addition, during oral argument of this case, counsel for appellant stated, in open court, in substance, that the railroad companies were deeply interested in the result of this case, for the reason that they had been compelled to pay claims twice, amounting annually to thousands of dollars, on account of creditors of the resident employees of this company

selling to non-residents of the State, in order to evade our exemption laws, who would bring suit thereon by attachment in the courts of some foreign State through which the road ran, and garnish the company for the wages due the employee, and recover judgment against it in said garnishment proceeding, which it was compelled to pay, because the wages of residents of this State were not exempt by the laws of said foreign State; and that subsequent thereto the said employee would sue the company in the courts of this State for the same wages which had been garnisheed in a foreign State, and said company would be required by the courts of this State to pay said wages a second time to the resident employee because they were exempt, as stated, under the laws of this State, and would not recognize the payment made in a foreign State.

My personal experience while on the circuit bench taught me that all that counsel stated in that regard was only too true, which facts induced the writer to draw the act referred to in the case of In re Flukes, 157 Mo. 125, which was intended to protect both the employer and the employee from the evils of such foreign attachments and garnishments. But this court in the case held, and properly so in my judgment, that said act was unconstitutional, and if these statutes were enacted for the same purpose, they for the same reason should also be held unconstitutional.

It cannot, therefore, be truthfully said that these sections of the statutes were enacted for the sole or primary benefit or protection of the railroad companies' employees, but they were, as before stated, enacted primarily for the protection of the railroad companies, for ultimately, as shown by said statement of counsel, that before their enactment the companies were compelled, first, to pay the wages to the foreign garnishing creditor; and, second, to pay them to the employee who again sued the company therefor in the courts of this State, thereby showing that the em-

ployee was ultimately out nothing except the delay in the use of his money.

So, if the question as to benefits conferred by these statutes is to determine their application, then clearly they should apply more strongly to the railroad companies than to the employees of these companies.

The argument, therefore, advanced to the effect that this exemption from garnishment was made for the benefit of employees instead of for the benefit of the railroad companies, is unsound, regardless of the persons for whose benefit the statute was enacted.

But in my judgment the question as to which of the parties these statutes benefit the most has nothing to do with the determination of the constitutionality of these sections. If they grant special privileges or immunity to appellant or to any one else, they are void.

The language of the sections should be borne in mind. They do not undertake to bestow some affirmative benefit upon the railroads of the State, but they undertake to grant immunity from garnishment to them where the sum sought to be collected from the employee is less than two hundred dollars, while all other employees in the State are required to answer and defend against all garnishment proceedings regardless of the amount claimed of their employees. If the statutes in question had exempted railroad companies from all garnishment proceedings, instead of from all *sums less than two hundred dollars due their employees,* which they do, then quite a different proposition would be presented for determination.

Immunity is primarily an exemption from the performance of some charge, duty, office, tax, imposition, or penalty. The benefits conferred by such a grant do not consist of affirmative matters bestowed upon the grantee, but of an exemption from the performance of some legal duty, or the payment of some penalty imposed. If tested by this rule, which is

clearly the proper one (for the reason that we must presume that the Legislature in the use of the word "immunity" used it in its plain or ordinary and usual sense), then the two sections of the statute under consideration have no application to railroad employees, except incidentally, as before stated, because they neither confer any privilege upon them, nor do they exempt them from the performance of any legal duty or from the payment of any penalty; but they do, on the other hand, undertake to excuse and exempt railroad companies from the legal duty to answer garnishment proceedings authorized to be instituted against them and all other persons by said section 3424, before quoted, regardless of the amount due.

I entertain no doubt but what said sections 3447 and 3448 are violative of said section 53 of the Constitution.

II.   Counsel for respondent also insist that said sections 3447 and 3448 offend against section I of the Fourteenth Amendment to the Constitution of the United States, which provides, among other things, that no State "shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . . nor deny to any person within its jurisdiction the equal protection of the laws."

Those sections of the statute provide, in substance, that a railroad company shall not be garnished for the wages due any of its employees where the sum sought to be recovered from such employees is less than two hundred dollars, without the claim against him has first been reduced to a judgment. In other words, all persons who have claims against any railroad employee for a sum in excess of two hundred dollars may sue him and garnish the railroad company for any wages due him, without first reducing their claims to judgment; but if their claims are for two hun-

dred dollars or less, then they cannot garnish the company until after the claims are reduced to final judgment, which in most cases of attachment, as we all know, would practically amount to a denial of justice; while another person with a claim for any sum over two hundred dollars could attach and garnish the company, and thereby recover his debt before the employee could collect his wages from the company or leave the State; but in either of said cases, the person whose claim was for less than two hundred dollars could never collect a cent from the same employee if he, after suit brought, should see proper to collect or assign his wages or leave the State before his claim could be reduced to a judgment.

If these statutes are constitutional and valid, then one of two merchants, for instance, doing business side by side in the city of St. Joseph, might, where he had sold to a railroad employee a bill of goods for the sum of two hundred and one dollars, sue him therefor in any court of competent jurisdiction, and garnish the railroad company for which he was working without first reducing his claim for the goods to a judgment, and recover his money; while the other merchant, who had sold him but two hundred dollars' worth of goods, or less, could not garnish the railroad company until after he had reduced his claim to judgment. And if the employee should happen to be a non-resident of the State or had concealed himself so that the ordinary process of law could not be served upon him, then the latter merchant could never reduce his claim to judgment, as is required by said section 3447, for the obvious reason that personal service could not be had upon him, the employee; and, consequently, if that section of the statute is valid, then said merchant could not garnish the employee's wages for the equally obvious reason that his claim has not been reduced to judgment, which, according to that section, is a prerequisite to the right

of garnishment. So, it is thus seen that in all cases where the employee is a non-resident of the State, or where he has concealed himself so that the ordinary process of law cannot be served upon him, the merchant who sells him two hundred dollars' worth of goods or less is absolutely deprived of all legal remedy. He can neither secure a personal judgment against such an employee, for the reason, as before stated, personal service can not be had upon him, nor can he sue by attachment and garnish such an employee's wages, for the reason that according to section 3447 he must first reduce his claim to judgment before he can garnish the employee's wages in the hands of the railroad companies.

Is that equal protection of the law within the meaning of the constitutional provision before mentioned? Clearly not. It is class legislation of the simplest form. Here are two merchants doing business side by side in the same city; one sells the same railroad employee two hundred and one dollars' worth of merchandise, and the other sells him two hundred dollars' worth. The first may sue and garnish the railroad company before judgment is obtained against the employee, and thereby collect his debt, simply because his claim is for two hundred and one dollars; but the valuable right of garnishment is withheld from the other merchant simply because his claim was for one dollar less, and he is thereby deprived of all remedy.

This court and the Supreme Court of the United States have frequently held that the constitutional provision before mentioned does not prevent legislation which embraces all persons or things that rationally belong to the same class and are similarly situated and upon whom it must operate equally and uniformly. [State ex inf. v. Standard Oil Co., 218 Mo. l. c. 369, and cases cited.] But the Supreme Court of the United States in the case of Railroad v. Ellis, 165 U. S. 150,

expressly held that the purpose of that provision was to prevent legislation which embraces within its provisions and effects only a portion of the persons or things which rationally belong to the same class and who are similarly situated.

The rule there announced applies to and fits the facts of the case at bar as perfectly as a glove fits the hand. The two merchants suggested belong rationally to the same class, as do also their claims; but as before shown, the statutes in question do not operate uniformly upon them or their claims, or upon all others who are similarly situated.

So in the case at bar, the statutes in question would not apply to any other person who rationally belongs to the same class to which respondent White belongs, whose demand against the railroad employee exceeds two hundred dollars. In other words, these statutes deny White's right to garnish the appellant, while they permit all other persons that right whose demands are for more than two hundred dollars, notwithstanding the fact that he belongs to the same class to which they belong, and notwithstanding the further fact that all of their demands were based upon identically the same claims or belong to the same class or character of claims, differing only in amounts, and probably differing only in a few cents or dollars in many cases.

In the discussion of a similar question, SHERWOOD, J., in the case of State v. Walsh, 136 Mo. 400, l. c. 405, speaking for the full court in Division Two, said: "Now it is a rule of long established construction in this State, a rule so well settled that it admits of no contravention, 'that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special.' [State ex rel. v. Tolle, 71 Mo. 650; State ex rel. v. Herrmann, 75 Mo. 340; State v. Julow, 129 Mo. 163.]''

The statutes involved in the case at bar, as before shown and as appears upon their face, were enacted for the purpose of exempting railroad companies from garnishment for wages due their employees, where the amount claimed did not exceed two hundred dollars; and at the same time authorize a portion of a certain class of creditors to garnish railroad companies for the purpose of collecting their claims against railroad employees, but withhold that same valuable right from the remaining portion of the same class whose claims are of the same character and class as are those of the former, differing only in amounts.

The case of In re Flukes, 157 Mo. 125, held section 2356, Revised Statutes 1899, to be unconstitutional, null and void for violating not only the Constitution of the United States, but also for the reason that it did violence to said section 53 of our Constitution. That statute was designed to prevent residents of this State from assigning or sending out of this State claims due and owing them by other residents of this State for the purpose of having instituted a suit thereon in the courts of another state, with a view of garnishing the wages of said resident debtors, and thereby evading our statutes which exempt certain wages from garnishment and execution. This court in speaking of that statute said it violated said section of the Federal Constitution in that it denied to the citizens of this State the right, among other things, to sue their debtors and garnish railroad companies and others for the wages due their employees, while the citizens of all other States and foreign countries could sue and garnish them. Under the statutes in question not all, but only a part, of the citizens of other States and foreign countries may, as a part of the citizens of this State may, sue and garnish railroad companies for their claims, but all the rest who have claims under two hundred dollars cannot do so. By this it is seen that the statute in the Flukes case made a single division

of the people who could and who could not sue and garnish, namely, the non-resident might do so, while the residents could not do so. According to the statutes under consideration, no resident or non-resident can sue or garnish when his claim is for a sum less than two hundred dollars; but the other class, all residents and non-residents whose claims are for a sum over two hundred dollars, may do so. The only difference between the two acts is that the former divides the people into classes by State lines while the latter divides them into classes by the dollar mark. I submit that the latter is more offensive than the former. In other words, the plain English of these sections of the statutes is that all persons who have claims against others for sums over two hundred dollars may sue them thereafter and garnish railroad companies for the wages due them, while it expressly withholds that right from all persons whose claims are for less than two hundred dollars.

For illustration, suppose section 3447, one of those under consideration, should be amended by the Legislature by adding thereto the following proviso: "Provided, however, that in all cases where the sum so demanded exceeds two hundred dollars garnishments may issue as is now provided by law." And when so amended that section would read as follows: "That hereafter no garnishment shall be issued by any court in any cause where the sum demanded is two hundred dollars or less, and where the property sought to be reached is wages due the defendant by any railroad corporation, until after judgment shall have been recovered by the plaintiff against the defendant in the action; provided, however, that in all cases where the sum so demanded exceeds two hundred dollars garnishments may issue as is now provided by law." If that section should be so amended, as above suggested, and a case identical in all respects to the one at bar should come to this court, challenging its constitu-

tionality, would it hesitate for a moment to hold it invalid because it violated both the State and Federal Constitutions in that particular before mentioned? Certainly not, for clearly it would do violence to both. But in the case at bar, when stripped of all unnecessary verbiage, counsel for appellant is simply asking this court to add, by way of construction, that proviso to that section, and then to enforce it as amended. That is the plain meaning and effect of his request, nothing more and nothing less. I, for one, do not believe courts should enact laws, and especially unconstitutional and vicious ones, as this one would clearly be.

The statute mentioned in the Flukes case was broader than those here under consideration, for the reason that it did not simply prohibit the merchant or other creditors who had claims against the employees for less than two hundred dollars from taking or sending them out of the State for the purpose of garnishing the wages of a resident employee in the courts of a foreign state; but it included all merchants and others who had like claims, regardless of the amounts, from taking or sending them out of the State for that purpose. But, as before stated, notwithstanding the broader provision of that statute, this court held it to be unconstitutional, null and void, because it violated said sections of the State and Federal constitution.

In the Flukes case, on page 132, this court, in discussing that statute, said: "The act is also obnoxious to the charge that it grants special and exclusive privileges to certain persons or association of persons, and denies the same to others in the same or similar situations. Judge Cooley says 'A statute would not be constitutional . . . which should select particular individuals from a class or locality, and subject them to peculiar rules, or impose upon them

230 Sup—21

special obligations or burdens from which others in the same locality or class are exempt. . . . Every one has a right to demand that he be governed by general rules, and a special statute which, without his consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments.' [Cooley on Const. Lim. (6 Ed.), 481-3.] Finally, section 2356 undertakes to arbitrarily separate natural classes of people, and to provide different rules of action for each of the dissevered fractions thus unwarrantably formed into a class of its own. [State v. Julow, supra.]''

Counsel for appellant, in printed briefs and in oral argument, concede that the Flukes case is an authority against their position in this case, and if followed will result in our holding the statutes under consideration unconstitutional, null and void. But they insist that the doctrine announced in that case is unsound and has been departed from by this court in a class of cases upholding the act of the Legislature giving lawyers a lien upon judgments for their fees; the statute exempting certain public officers and municipal corporations from garnishment, and many other acts similar in character. For these reasons it is contended that the Flukes case should be overruled and no longer followed. We are unable to concur with these views of counsel. There is no conflict between the doctrine stated in the Flukes case and that stated in the case upholding the acts mentioned.

The Attorney's Lien Law was passed in 1901, and gives attorneys a lien on the judgment recovered for their services performed therein. The constitutionality of this act was challenged in the case of O'Connor v. Railroad, 198 Mo. 622, and the following language used by Fox, J., in that case shows that he recognized

the validity of the doctrine announced in the Flukes case, which denounces class legislation, namely:

"This act undertakes to cover a certain class of persons engaged in a particular profession. It does not undertake to select any particular person in that class, but applies to all alike who fall within the class of attorneys-at-law.

"The history of legislation in this State demonstrates that the lawmaking power found it essential for the purposes of legislation to divide both persons and business into separate classes, and it is now no longer an open question in the courts of this State that legislation applicable to a particular class is not violative of the constitutional provision which prohibits the enactment of special laws. That lawyers in this State belong to a particular class we think there can be no dispute, and we can see no reasons, even though they be only lawyers, why legislation which deals in a general way with the affairs of that class should be held unconstitutional. We have legislation in this State respecting other classes of persons, such as fellow-servants, mechanics, landlords, bankers, insurance laws and other legislation, which has reference to only one line of trade or class of persons; yet wherever these laws have been in judgment before the courts of this State they have been held constitutional and valid."

That case properly held that lawyers constitute a particular and natural class, and that the acts dealing with them as a class are not obnoxious to the constitutional provision prohibiting class legislation. But suppose that act instead of dealing with the entire class of lawyers, as it does, had provided that all lawyers whose fees exceed the sum of two hundred dollars should have a lien upon the judgment recovered by them for their services so rendered, then would it be seriously contended that such an act would be valid? Certainly not. That is made perfectly clear by the

first paragraph above quoted from Judge Fox's opinion.

Nor is there anything contained in any of the cases upholding the statute exempting certain officers of the law and municipalities from garnishment in conflict with the doctrine announced in the Flukes case. That statute exempts the officers and cities therein mentioned from all garnishment proceedings, and this court has repeatedly and properly enforced its provisions, but its constitutionality has never been questioned. It was enacted solely upon principles of public policy, as will be seen by consulting the following cases. [Geist v. St. Louis, 156 Mo. 643, and cases cited.] But suppose that statute instead of entirely exempting those officers and cities from all garnishment proceedings had exempted them from all garnishment proceedings where the sum claimed does not exceed two hundred dollars, then could it be logically contended that such a statute would not discriminate against all persons whose claims are for sums less than two hundred dollars? I think not.

The policy announced in the cases before cited would be waived by permitting those officers and cities to be garnished in cases where the sums claimed were for two hundred dollars or over. Such a statute would be discriminative between the two classes of claimants: namely, those whose claims are for two hundred dollars or less, and those whose claims are for more than two hundred dollars. Such a statute would clearly violate both the State and Federal Constitutions, as did the statute mentioned in the Flukes case, and as sections 3447 and 3448 do.

For the reasons before expressed, I think the judgment should be affirmed, in which *Gantt, J.,* concurs.