HANS CHRISTIAN PETERSEN v. ST. LOUIS TRANSIT COMPANY, Appellant.

Division One, November 21, 1906.

1. **NEGLIGENCE: Driving Along Track.** There is no inexorable rule of law that requires a traveler in a closed vehicle going along a public street on which is a railway track, to look behind him, for an approaching car, of which he has no warning and of the proximity of which he has no knowledge, every time his horse or vehicle may be about to go on, along or across the rails of the track.

2. ———: ———: **Not Looking Behind.** Plaintiff and his uncle, in a closed vehicle, drawn by a single horse, driven by the uncle, drove down a cross street, and looked for a car, and seeing

Petersen v. Transit Co.

none within a block, although they might have seen one five or six blocks away, turned into the street, and did not look back again, but drove ahead near the rails of the track, and as they were in the act of crossing the track diagonally, forty or fifty feet from the crossing, defendant's car struck their vehicle, and the horse ran away, injuring plaintiff. The motorman could have seen the vehicle 300 feet or more before he struck it, but did nothing more than slow down the car, which had been running 20 miles an hour, to 6 or 8 miles, according to his testimony, or 30 or 40 miles, according to plaintiff's evidence, but did not ring the bell or sound the whistle or attempt to stop. *Held*, that the demurrer should not have been sustained on the theory that plaintiff and his uncle could have seen the car six or seven blocks away had they looked that far and didn't, or on the theory that it was their duty, after they began to drive along and across the track, to have looked back for the car approaching from behind, for, even conceding the negligence of the uncle (the driver), which is not done, plaintiff ought to recover, for two reasons: first, the car could have been stopped, by the exercise of ordinary care, after the motorman discovered their peril; and, second, the negligence of the uncle could not be imputed to the plaintiff.

3. ———: Of Another: Imputable to Plaintiff. A mere passenger in a vehicle, exercising no control over the driver or its movements, is not to be held responsible for the negligent act of such driver in driving the vehicle on the track in front of a street car.

4. MULTITUDINOUS INSTRUCTIONS. Appellant cannot complain of the large number of instructions if the most of those given were asked by him.

5. INSTRUCTIONS: Modification. Appellant cannot complain of modification of his instructions if no such modification appears in the abstract.

6. ———: Negligence. Instructions for plaintiff, set out in the opinion, are held to fairly and clearly present to the jury the issues of negligence in a case wherein he was a passenger in a vehicle which driven by his uncle proceeded along a street railway track and in attempting to cross said track was struck by a car approaching from behind at an excessive rate of speed, without signal or warning, which collision caused the horse to run away and the plaintiff to be injured.

7. ———: Verdict for Right Party. Although the instructions given may not be wholly free from criticism, yet if the verdict is manifestly for the right party, the judgment will not be reversed.

8. **VERDICT: Nine Jurors: Signed by Foreman.** A verdict in a civil case signed by nine of the jurors, is not defective because the first juror who signed it attached the word "foreman" after his signature.

Appeal from Cole Circuit Court.—*Hon. Jas. E. Hazell,*
Judge.

AFFIRMED.

*Boyle & Priest* and *Morton Jourdan* for appellant.

(1) The court should have given the instructions in the nature of a demurrer to the testimony and directed a verdict at the close of the plaintiff's case. Kreis v. Railroad, 148 Mo. 321; Roenfeldt v. Railroad, 180 Mo. 554; Payne v. Railroad, 136 Mo. 534; Ross v. Railroad, 88 S. W. 144. (2) The court should have directed a verdict at the close of the entire case and given the instruction asked by the defendant at that time, in the nature of a demurrer to the testimony. Roenfeldt v. Railroad, 180 Mo. 554; Kreis v. Railroad, 148 Mo. 321; Payne v. Railroad, 136 Mo. 534; Ross v. Railroad, 88 S. W. 144. (3) The great multitude of instructions given by the court were confusing and misleading, and because of such erroneous conduct upon the part of the court in giving to the jury in a case of this character twenty-seven instructions, the judgment should be reversed. Sidway v. Live Stock Co., 163 Mo. 342; Hickman v. Link, 116 Mo. 123; Crawshaw v. Sumner, 56 Mo. 517. (4) The first instruction given by the court was error, for the reason that it was too general and it licensed the jury to find a verdict against the defendant because of any omission in the performance of the duty of the motorman which might be found by the jury, whether it was one of the acts of negligence contained in the petition or not. Murray v. Railroad, 176 Mo. 183; Hartman v. Railroad, 87 S. W. 88. (5) The court committed error in submitting

to the jury the question of ordinary care upon the part of the plaintiff, to avoid the danger and injury, because there was no testimony upon which to predicate such instruction. De Donato v. Morrison, 160 Mo. 581; Glass v. Gelvin, 80 Mo. 297; Ely v. Railroad, 77 Mo. 34. (6) Instruction 6 is indefinite and uncertain and misleading. The petition avers affirmatively the ordinary care upon the part of the plaintiff, and yet this instruction tells the jury in effect that the burden of proof is upon defendant to show a want of care upon the part of plaintiff. Liese v. Meyer, 143 Mo. 547; Railroad v. Wishert, 89 S. W. 460. (7) Instruction 7 tells the jury that "if the plaintiff was thrown out and was injured as a natural and direct result of the running away of his horse, and of said collision, then the said injury to plaintiff was a direct consequence or result of said collision." This is confusing and misleading. (8) There is no verdict in this case, such as is contemplated by the law. The verdict returned into court was signed by eight members of the jury in their individual capacity as jurors. That it was not the verdict of the jury is shown by the affidavits filed with the motion for new trial of three members of the jury. Under instruction 9, it was the duty of the jury, if nine of the number agreed upon the verdict, to sign the same. While it is true L. D. Gordon signed it, it was as foreman, he signed it in his official capacity, and not as one of the nine. That he had no right to sign a verdict as its official head and for the rest of the jury is shown by the affidavits of Harding, Lockett and Price. For this reason, the judgment rendered upon this alleged verdict should be reversed.

*Richard F. Ralph* and *Barclay, Shields & Fauntleroy* for respondent.

(1) The instruction in the nature of a demurrer to the evidence could not properly have been given.

There is conclusive evidence of several acts of negligence of defendant. Defendant's motorman admits that he did not ring the bell when he "saw the buggy coming towards the track." Such negligence is actionable. Schmidt v. Railroad, 163 Mo. 645. The same motorman, as a witness for defendant, admitted that he saw, in a position of danger (near enough to the track to be hit) the buggy in which plaintiff was riding, at a distance of 25 or 30 feet in front of the car; that he could have stopped the car at the rate at which it was then going (six miles per hour, according to him) within a distance of 10 or 15 feet. He also states that he did not stop the car in time to avoid the collision, but that it ran 90 feet beyond the point of contact after the car hit the buggy. Such negligence is actionable. Defendant had no exclusive right to the public street. Kennayde v. Railroad, 45 Mo. 262; Klockenbrink v. Railroad, 172 Mo. 678; Schafstette v. Railroad, 175 Mo. 142. (2) No demurrer to the evidence should have been sustained at the close of the entire case for the reasons above given and a further reason: there was no evidence of negligence on the part of the plaintiff as a matter of law, and the jury found that he was not negligent as a matter of fact. The question of plaintiff's negligence was obviously a question of fact in the circumstances. Peterson v. Railroad, 114 Mo. App. 374; Kellny v. Railroad, 101 Mo. 67; Fearons v. Railroad, 180 Mo. 208. (3) The first instruction for the plaintiff was within the allegations of the petition. It was furthermore supported by the admissions of the defendant's witness, the motorman, and was correct in point of law. It is actionable for a street car to run down a buggy, moving in the same direction in a public street, when by ordinary care in operating the car the collision can be avoided. Buren v. Railroad, 104 Mo. App. 224; Esler v. Railroad, 109 Mo. App. 580. (4) It would have been serious error if the court had undertaken to decide that plaintiff was guilty of negligence.

He was a green foreign boy, sixteen years old, only a few months in this country, sitting in a buggy beside his uncle, his guardian, who was driving. Under repeated decisions of this court (which settle the law beyond question) plaintiff was not chargeable with the negligence of his uncle, who was driving the horse; to say nothing of the difference in their ages and relations to each other, in respect to the matter of control. Plaintiff appears to have acted with reasonable prudence, the jury so found under instructions of both parties. No negligence of the driver of the buggy can properly be imputed to the plaintiff. Becke v. Railroad, 102 Mo. 544; The Bernina, 13 App. Cas. (L. R.) 1; Sluder v. Railroad, 189 Mo. 107.

BRACE, P. J.—This is an action for damages for personal injuries, in which the plaintiff obtained judgment below for $5,000, and the defendant appeals.

About 11 o'clock on the morning of the 29th of December, 1901, the plaintiff, then a minor, aged about sixteen years, was in a close covered storm buggy, drawn by one horse, driven by his uncle Ole Petersen, going in an easterly direction on Clark avenue between 21st and 22nd streets, in the city of St. Louis, when the buggy was run into and struck from behind by one of defendant's cars, going in the same direction, causing the horse to run away and throw the plaintiff upon a pile of rocks on the sidewalk in Twenty-first street, whereby his skull was fractured, the right eye so injured as to destroy its vision, and he was otherwise injured.

The petition alleges that his injuries were caused by the negligence of the defendant's servants in charge of the car. The specific acts of negligence charged are, in substance, a breach of the vigilant watch and speed ordinances, a reckless and unlawful rate of speed, failure to give any warning signals, and to exercise ordinary care to prevent the collision.

The answer was a general denial, with a plea of contributory negligence, upon which issue was joined by reply.

At the close of the plaintiff's evidence the defendant demurred thereto, and, upon the demurrer being overruled, introduced its evidence in defense, and at the close of all the evidence renewed its demurrer; and the first question presented for determination is whether upon all the evidence the court erred in submitting the case to the jury.

I. The evidence for the plaintiff tended to prove that he was a young Dane who had been in this country only about three months, who could not speak the English language and had to be examined through an interpreter; that the buggy and horse were owned and being driven by his uncle, Ole Petersen, a citizen of mature years, doing business on Clark avenue; that Clark avenue is a narrow street running east and west, about thirty feet wide between the sidewalks; that defendant had a single track in the center of the street, occupying a space of about six feet of its width and leaving a space of about twelve feet on either side; that on its track cars were run but one way, from west to east; that Twenty-first, Twenty-second and Twenty-third streets run north and south, crossing Clark avenue at right angles in a densely populated part of the city; that the width of these streets is between fifty and sixty feet, and the length of the blocks on the avenue between them is about three hundred feet; that Ole Petersen drove the buggy south on Twenty-second street to its intersection with Clark avenue, looked west, as did his nephew, the plaintiff, and, seeing no approaching car within the distance of a block, turned east on Clark avenue and drove down that street in a walk or slow trot close to the north rail of the track, and as he was in the act of crossing the track diagonally some forty or fifty feet east of the crossing the

horse and buggy were struck by defendant's car going east, which ran about one hundred .feet further before it stopped; that neither the plaintiff nor his uncle looked back behind them for an approaching car after they turned east on Clark avenue; that the maximum rate of speed prescribed for street cars was eight miles per hour; that the car was going at a speed of thirty or forty miles an hour; that no bell was rung, gong sounded nor any other warning of its approach given.

The evidence for the defendant tended to prove that the car was going at a speed of from six to twelve miles an hour and that the bell was being rung as the car approached Twenty-second street; that the track was straight and an approaching car going east could be seen at a distance of from six to eight blocks. The motorman, a witness for the defendant, testified that he first noticed the horse and buggy just after he crossed Twenty-third street going east; the buggy was turned east from 22nd street on Clark avenue and was between the track and sidewalk, the horse going in a trot or walk; that the car was running at the rate of twenty miles an hour; that as soon as the buggy came in sight he began to slow down by applying the brake, thinking the driver intended to cross the track, and when at the crossing of Twenty-second street he was running "probably 6, 7 or 8 miles" an hour; that at the speed he was then going the car could have been stopped in from ten to fifteen feet; that he noticed that the buggy was on the track in front of his car some twenty-five or thirty feet distant when he was on Twenty-second street about east of the crossing; that he gave the brake another turn, but rang no bell and did not reverse until within three or four feet of the buggy, and the car did not stop after the collision until it ran about 90 feet.

It is contended for the defendant that the demurrer to the evidence ought to have been sustained because the occupants of the buggy when it reached Clark avenue by looking west on that street could have seen

a car approaching for a distance of six or seven blocks, and as they did not look that far west for an approaching car but only as far as a block, and, seeing no approaching car, entered upon that street, they were guilty of negligence; and because after they entered upon the street and were driving diagonally across it some forty or fifty feet beyond the crossing they did not look behind them for an approaching car before the buggy went on the track, they were guilty of negligence.

The law imposed the duty upon the defendant's servants in running its car upon Clark avenue to run them at a rate of speed not to exceed eight miles per hour, and to keep a vigilant watch for all vehicles and persons either on the track or moving towards it, and on the first appearance of danger to stop the car in the shortest time and space possible. Ole Petersen, a citizen of St. Louis, and for many years a resident thereof, had a right to assume when about to drive onto Clark avenue at the Twenty-second street crossing that defendant's cars were being run thereon in obedience to these legal requirements, and when he looked to the west, the only direction from which a car was to be expected, and saw no car approaching within a block, there was no apparent danger in driving onto the street, turning to the east and pursuing his way along the street, and he was guilty of no negligence in so doing. In turning into the space between the curb of the sidewalk and the north rail of the track the head of his horse must have been very near that rail and the whole outfit in plain view of the motorman, whose duty it was to be on the lookout for a vehicle in that situation. Thereafter the movement of the vehicle was in front of the car and toward the track in plain view of the motorman until it was struck, about fifty feet from the crossing. The motorman admits that he saw the vehicle when he was at the Twenty-third street crossing. It was then in front of him at the Twenty-second street

crossing and distant from him about 300 feet, moving as indicated. He admits that he was then running at a speed of twenty miles an hour, but, seeing the situation of the vehicle, applied the brake, and when he reached the Twenty-second street crossing the car was going only 6, 7 or 8 miles an hour. That he did not ring the bell when he saw the buggy coming towards the track, but when about east of Twenty-second street crossing, noticing that the buggy was on the track ahead about twenty-five or thirty feet from the car, he gave the brake another turn and when within three or four feet of it and when the collision was inevitable reversed the power, and this was all he did to prevent it, although, according to his own testimony, he ought to have stopped the car at the speed he was going within a space of ten or fifteen feet. We know of no inexorable rule of law that requires a traveler in a closed vehicle going along a public street of a city on which a street railroad track is laid to look behind him for an approaching car, of which he has no warning and of the proximity of which he has no knowledge, every time his horse or vehicle may be about to go on, along or across the rails of the track.

Whether he has been guilty of negligence in going on or over those rails in such case is a question to be determined by the jury under all the circumstances of the case. But conceding that Ole Petersen was negligent in permitting his horse and buggy to go upon the rails, without looking behind for an approaching car, and leaving out of view all the evidence of the plaintiff's witnesses of the unlawful and reckless speed at which they testified the car was running, still, according to the testimony of the motorman, the defendant's own witness, the car ought to have been stopped in time to have prevented the collision, after he discovered the perilous position in which the vehicle was; his evidence tended to prove that he could have stopped the car and prevented the collision by the exercise of proper care

after he discovered the perilous position in which the vehicle was. And this of itself was sufficient to take the case to the jury, even if Ole Petersen had been the plaintiff in the case. [Rapp v. Railroad, 190 Mo. 144, and cases cited on page 161.] But he was not, and the status of the plaintiff in the buggy was not that of his uncle—he was a mere passenger in the buggy exercising no control whatever over its management or movements, and, having no right or power to do so, and upon a principle well recognized in this State, the negligence of Ole Petersen, if any, could not be attributed to him, for, as we have said, it is against both reason and authority that an innocent person should be made responsible for the wrong act of another over whom he has, and exercises no control, and who is neither his servant, nor his agent. [Becke v. Railroad, 102 Mo. 544; Sluder v. Railroad, 189 Mo. 107.

The court committed no error in overruling the demurrers to the evidence.

II. The case was submitted to the jury upon twenty-seven instructions, and for the defendant it is contended the judgment ought to be reversed on account of the multitude of the instructions. While it is not specifically stated in the abstract which of these instructions were given at the instance of the plaintiff and which at the instance of the defendant, it does inferentially appear on the face of the instructions and the motion for a new trial that those numbered 1 to 10 inclusive were given for and at the instance of the plaintiff, and those numbered from 11 to 27, inclusive, were given for and at the instance of the defendant. Besides these, the defendant asked for three other instructions which were refused. So that, besides the instructions in the nature of demurrers to the evidence, the defendant asked for twenty other instructions, seventeen of which were given, and now complains of the multitude of the instructions. It does not lie in its mouth to make such a complaint. The defendant also

complains of some of its own instructions on the theory of modifications thereof by the court, but no such modifications appear in the abstract and it is in no position to make such a complaint. No complaint is made of the action of the court upon the refused instructions, and the defendant's instructions may be dismissed without further notice. Of the ten instructions given for the plaintiff, the 4th was a definition of ordinary care, the 5th upon the measure of damages, the 6th upon the burden of proof, the 9th upon the form of the verdict and the 10th on the credibility of witnesses. We find no substantial error affecting the merits of the case in any of these instructions. The other instructions upon which the main issue was submitted to the jury are as follows:

"1. The court instructs the jury that it was the duty of the defendant railway company in operating the car mentioned in evidence in this case on Clark avenue in the city of St. Louis to exercise ordinary care to avoid coming in contact with the buggy mentioned in evidence when the same was on the track or in such proximity thereto as to be in danger of being hit by a car running on defendant's track; and if you believe and find from the evidence that the collision between the car and the buggy in which the plaintiff, Hans, was riding was occasioned by the omission of the motorman in charge of the movement of defendant's car to use reasonable care to avoid a collision with said buggy, and that because of such want of care the collision took place, and as a direct consequence thereof the horse attached to said buggy ran away and became unmanageable, and that as a direct result of said facts plaintiff, Hans, received the injuries mentioned in evidence, and that the plaintiff, Hans, personally, at and before the events above described, exercised ordinary care to avoid injury, and danger, then your verdict should be for the plaintiff.

"2. The court instructs the jury that if you be-

lieve from the evidence that the buggy was going east
along Clark avenue in a course so near the railway
track as to be in a position to be hit by defendant's car
running on said track, and that the motorman in charge
of the movements of said car could, by the exercise of
ordinary care on his part, have observed said course of
the buggy, and could have stopped or checked said car
so as to avoid hitting the buggy; and if you further find
from the evidence that said motorman neglected to use
such ordinary care to observe said buggy or to check
said car so as to avoid hitting the buggy, and that be-
cause of said neglect the car ran into the buggy and
thereby caused the horse to run away and throw plain-
tiff out of the buggy to his injury, and the plaintiff,
Hans, personally used ordinary care to avoid danger
and injury at and before said collision and up to the
time when he was injured, then your verdict should be
for the plaintiff, even although you may believe from
the evidence that the driver of the buggy, Ole Petersen,
failed or omitted to use ordinary care to notice the ap-
proach of the car or to avoid a collision with the car.

"3. The court instructs the jury that the plaintiff,
Hans, is not answerable or responsible in this case for
any want or omission of care on the part of Ole Peter-
sen in respect to looking or listening for an approach-
ing car or in respect of the management of the horse
or buggy mentioned in the evidence; and if you believe
from the evidence that the plaintiff, Hans, himself used
ordinary care to avoid danger and injury, at and be-
fore the collision and up to the time when said plaintiff
was injured, then you should find in favor of plaintiff,
Hans, on the issue of his alleged negligence.

"7. The court instructs the jury that if you be-
lieve from the evidence that the collision between the
defendant's car and the horse or buggy was caused by
the negligence, that is to say, the want of ordinary
care, on the part of the defendant's agent in charge of
the movements of said car, in any of the particulars

mentioned in the other instructions, and that said collision caused the horse to run away, and that plaintiff, Hans, was thereafter thrown out of the buggy, without any omission of ordinary care for his own safety; and that he was thrown out and was injured as a natural and direct result of the running away of said horse, and of said collision, then the said injury to plaintiff was a direct consequence or result of said collision, as mentioned in the other instructions.

"8. The court instructs the jury that if they believe from the evidence that after the buggy or the horse mentioned in the evidence was going in a course so near the track as to be within striking distance of the approaching car of the defendant on Clark avenue, the said car was then far enough distant from the said buggy to have been stopped by the motorman in charge of the movements of said car by the exercise of ordinary care on his part in observing said horse and buggy and in the use of the appliances at his command on said car, and that said motorman failed or neglected to use such ordinary care and in consequence of said neglect the car hit the horse or buggy, and that as a direct consequence of said collision the horse ran away and the plaintiff, Hans, received the injuries of which he complains, then the jury should find for the plaintiff.''

These instructions presented the case very fairly and clearly to the jury, and we fail to find in them any material error prejudicial to the defendant, affecting the merits of the case. Although they may not come fully up to the standard of perfection required by the criticisms of defendant's learned and ingenious counsel, yet as upon the whole of the evidence the verdict was manifestly for the right party—we cannot for that reason reverse the judgment thereupon. [R. S. 1899, secs. 659, 865.] Those criticisms have been sufficiently answered in the brief of counsel for plaintiff and need not be reviewed here.

III. It is finally contended that the judgment ought to be reversed because "there is no verdict in the case such as is contemplated by law."

The verdict was signed by nine jurors but because the first juror who signed his name attached the word "foreman" to his signature, it is contended that the verdict was not that of the nine jurors who signed it. The statement of this proposition is a sufficient refutation of it.

Finding no error in the trial of this cause, calling for a reversal of the judgment of the circuit court, the same is affirmed.

All concur except *Graves, J.,* not sitting.