GEORGIA THOMPSON, Administratrix of ELLA ROSE, Appellant, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY.—69 S. W. (2d) 936.

Division One, March 14, 1934.

*F. W. Barrett* for appellant.

*E. T. Miller* and *Phil. M. Donnelly* for respondent.

STURGIS, C.—Plaintiff sues for the statutory penalty as administratrix of Ella Rose, deceased, who was killed on February 2, 1930, in the city of Springfield, Missouri, by reason of the automobile in which she was riding as a guest being run into by defendant's passenger train going east. Albert M. Powell was driving the automobile in which the deceased was riding and was going south on Nettleton Avenue, the principal north and south street in the west part of the city, and the automobile and train collided at the crossing. Both occupants of the automobile were instantly killed.

Plaintiff alleges several grounds of negligence on defendant's part causing the accident, including running the train at a high and dangerous rate of speed in approaching this street crossing without giving sufficient warning, ringing the bell or sounding the whistle;

also in failing to stop the train or slacken the speed when the operators of the train saw, or by due care could have seen, the automobile in which the deceased was riding approaching and going onto the railroad track in time to have avoided the collision by the means at hand. The plaintiff also alleged that there was in force and effect in Springfield a city ordinance prohibiting any person or corporation from running railroad cars propelled by steam at a greater rate of speed than ten miles per hour within the corporate limits of the city, and that defendant was running the train in question at a much greater rate of speed than ten miles per hour, in violation of such ordinance.

The principal point at issue here is raised by defendant's answer, which, after admitting its incorporation, that Nettleton Avenue is a public street in Springfield which intersects defendant's railroad, and that on February 2, 1930, the deceased, while attempting to cross defendant's track in an automobile on said street, collided with one of defendant's trains, then proceeds to allege:

"That Section 948 of the Revised Ordinances of the City of Springfield, Missouri, referred to in plaintiff's petition, is unreasonable, arbitrary, discriminatory, unlawful and an unreasonable interference with interstate commerce and the carrying of U. S. mail; that defendant is engaged in interstate commerce and in carrying U. S. mail; that defendant's main line track extends through the City of Springfield, Missouri, for a distance of over 4.4 miles; that said section of said Revised Ordinances applies for the full length through the City of Springfield from the western limits to the eastern limits and is not confined to the thickly populated sections of Springfield; that a part of the territory both east and west of the station in Springfield is open and sparsely settled territory, as well as the thickly populated; that defendant's trains are in competition with other lines of railroad from different terminal points in other states; and are also in competition with motor busses and aeroplane transportation of passengers for hire, both intrastate and interstate; and also in competition with motor trucks in the transportation of freight for hire; that in order to satisfy the demands of the public and keep pace with the times, it is necessary for defendant to operate its interstate and mail trains at a rate of speed in excess of ten miles per hour; that if the rate of speed provided for in Section 948 of said Revised Ordinances of Springfield is invoked in each city, town and village across the State of Missouri where defendant's main line of tracks are located, and on which its fast interstate and mail trains operate, and especially through the sparsely settled and open territory of cities, towns and villages, that defendant would be practically prohibited from competing with other lines of railroad in the transportation of passengers for hire and unable to meet the demands of the public and keep pace with the times; that between St. Louis and Monett through Springfield twenty per cent of defendant's main

line of track is within the limits of cities, towns and villages and the enforcement of said ordinance within the city limits of Springfield and the enforcement of similar ordinances through other cities, towns and villages through which defendant's main line of track passes, would be and is unreasonable, arbitrary, discriminatory and an unlawful interference with interstate commerce and the carrying of the U. S. mail.

"Defendant further alleges that several U. S. Highways cross the city limits of Springfield, Missouri, and that one of said Highways, namely No. 66, parallels the line of railroad of defendant from St. Louis to Springfield and through the city limits of Springfield both east and west; that motor busses operate under authority of law over said U. S. Highways and over said highways within the city limits of Springfield and over the streets of Springfield, Missouri, transporting passengers for hire in competition with defendant's line of railroad into, through and from Springfield, Missouri; that defendant's transportation of passengers is by rail and on fixed steel tracks, while motor busses in transporting passengers through the City of Springfield and on the U. S. Highways within the limits of said city and on the streets of said city, may and do use any part of said U. S. Highways within said city limits, or the streets of said city, and are not confined to a fixed point of travel on said highways or streets; and that while said motor busses in transporting passengers for hire on the streets of Springfield and on and over the U. S. Highways within the city limits of Springfield and into and from said city, are in competition with defendant, yet there is no ordinance in the city of Springfield confining or limiting the speed of motor busses in the transportation of passengers for hire over said streets or over said U. S. Highways in said city limits to ten miles per hour as is required by said Section 948 relative to the transportation of passengers by railroad, and that said Section 948 of said Revised Ordinances of the city of Springfield and said speed limit of ten miles per hour provided by said section of said Revised Ordinances is a discrimination against the transportaton of passengers for hire by railroads through the city of Springfield, and is a discrimination against defendant and a discrimination and unlawful interference with interstate commerce and the carrying of U. S. mail."

Defendant then alleges that there was another ordinance of the city of Springfield which required automobiles at the street crossing in question and other crossings to come to a complete stop before proceeding across the railroad track, and that the driver of the automobile and the deceased did not do this, but were guilty of negligence, barring a recovery, in failing to comply with such ordinance. Defendant also charged the driver of the car and the deceased with negligence in that they saw or could have seen the approaching train,

which was in plain view, in abundant time to have stopped in safety, but failed to do so.

On these issues the case was tried to a jury. The court overruled defendant's demurrer to the evidence and submitted the case, resulting in a verdict and judgment for defendant, and plaintiff has appealed.

In presenting the case to this court, plaintiff's abstract of the record is prepared with a view of presenting the single point of the trial court's error in ruling that the ordinance of the city of Springfield prohibiting the running of railroad trains at a greater speed than ten miles per hour is void for unreasonableness and unfair discrimination, and in refusing to admit such ordinance in evidence. The defendant has prepared an additional abstract of the record with a view of showing that, regardless of any error in excluding the speed ordinance from consideration by the jury, the case should be affirmed for the reason that the deceased was conclusively shown to have been guilty of contributory negligence and the court should have sustained the demurrer to the evidence and directed a verdict for defendant. The instructions given and refused are not presented by either party and it is not shown whether or not the case was submitted on the humanitarian doctrine, which overrides contributory negligence as a defense, but if that theory was submitted the jury found for defendant, and plaintiff assigns no error in that respect.

Considering plaintiff's point that the court erred in refusing to admit the speed ordinance in evidence, the record shows that evidence was introduced showing that Nettleton was a paved and much traveled street, the principal north and south street in the west part of the city, over which automobiles and other travel was almost constantly passing; that this was a grade crossing over the main line of the railroad and about half way between the defendant's passenger depot and the western limits of the city; that the train in question approached and passed over this crossing at fifty to sixty miles per hour (the railroad engineer said about thirty miles per hour). The accident occurred about five o'clock in the evening while it was yet light. The plaintiff then offered in evidence the city ordinance in question, the first section of which prohibits the running of railroad trains within certain boundaries (the congested business section) at more than six miles per hour, and the second section reads:

"It shall be unlawful for any person, company, firm, association or corporation, or any agent, servant or employee of same, or any engineer or person in charge of any railroad cars propelled by steam to run same at a greater rate of speed than ten miles per hour within the corporate limits of said City, outside of boundaries fixed in Section One of this Ordinance."

The next section of the ordinance provides a penalty for its vio-

lation. The ordinance was enacted in December, 1906. Defendant carefully worded its objection to the ordinance in these words:

"Defendant objects to this offer for the reason that said ordinance is unreasonable, arbitrary, discriminatory, and unlawful and an unreasonable interference with interstate commerce and the carrying of United States mail; that said ordinance applies through the whole city limits of Springfield, and is not confined to the thickly populated sections of Springfield and does not limit or confine the speed of motor busses carrying passengers for hire on the streets and within the city limits of Springfield, Missouri, and is a discrimination against rail transportation of passengers for hire as against motor bus transportation of passengers for hire. And in this connection defendant desires to offer proof on this objection to show that U. S. Highways cross the city limits of Springfield, run within the city limits of Springfield, and that motor busses carrying passengers for hire, both intrastate and interstate, go through the City of Springfield, in competition with the defendant, and that said transportation by motor bus is in competition with defendant, and, there being no ordinance confining or limiting the speed limit on motor busses, that this ordinance would be a discrimination against rail transportation of passengers for hire."

The court then heard the evidence in support of defendant's motion, which showed, among other things, that there was no ordinance in Springfield limiting the speed of motor busses carrying passengers except the general ordinance limiting the speed of all automobiles and motor cars to twenty miles per hour within the city limits; that there are several lines of motor busses carrying passengers for hire operating over the several highways passing through Springfield; that Highway 66 is a through State and U. S. highway, entering the State at St. Louis and practically paralleling the defendant's railroad across the State and through Springfield, and that motor bus lines operate over and carry both passengers and freight over this highway in competition with defendant both as to intrastate and interstate traffic; that other motor bus lines do much the same over other State highways passing through the city; that defendant is and was engaged in intrastate and interstate commerce and carries the United States mail; that the passenger train in question was a through interstate train running from Texas points through Springfield and St. Louis to Chicago. It was also shown that more than four miles of defendant's main line track was within the corporate limits of Springfield and about one-fifth of its trackage from Monett on the west to St. Louis was within the corporate limits of towns and cities. The court made the following ruling:

"I think that in this day and age nearly everyone has some knowledge of the speed of motor vehicles and of trains, and that the court can take judicial notice of the fact that ten miles per hour is a

966

very slow rate of speed for a railroad passenger train, or *for automobiles or busses* carrying passengers. I think the ordinance limiting the speed of a through passenger train, through a city like Springfield, to not exceeding ten miles per hour is unreasonable and void, particularly when it appears that passenger busses in competition with the railroad are not limited to approximately such speed, and the objections to the ordinance are sustained."

It will be seen that the objection made to this ordinance in defendant's answer and in the objection to the evidence and the court's ruling thereon is based on two distinct grounds, to-wit, that the maximum rate of speed of ten miles per hour fixed by the ordinance is unreasonable, arbitrary and void in this day and age, at least when applied to "through passenger trains, through a city like Springfield." In making this ruling the court called to his aid what he said everyone knows "in this day and age" and took judicial notice that ten miles per hour is "a very slow rate of speed for a passenger train," and that the same would apply to a like limitation of speed of "automobiles or motor busses carrying passengers." The other ground of objection is that the speed ordinance is discriminatory and unfair in that it applies to railroad trains only and that "passenger busses in competition with the railroad are not limited to approximately such speed." This last objection is ruled on only incidentally in connection with the main objection that the speed limit of ten miles per hour "is very slow in this day and age" and therefore unreasonable and void.

█ In view of the long and uniform line of decisions in this State to the contrary, it will readily be seen that if this ruling of the trial court is to be the law hereafter, it must be because of the changed condition in this day and age. As early as Karle v. Kansas City, St. J. & C. B. Railroad Co., 55 Mo. 476, 483, this court said of an ordinance forbidding the operation of trains in St. Joseph at a greater rate of speed than five miles per hour, that its violation was negligence *per se*. Cases almost without number uphold this rule. In Gratiot v. Missouri Pac. Ry. Co., 116 Mo. 450, 463, 16 S. W. 384, the court considered an ordinance of St. Louis limiting the speed of railroad trains in that city to six miles per hour and an instruction telling the jury that a violation of such rate of speed was negligence. The court there said: "There is perhaps no question better settled in this State than that the running of trains or cars in violation of, and in excess of the number of miles per hour prescribed by a city ordinance is negligence *per se*. (Citing a large number of cases from this and other states.)" In Jackson v. Kansas City, Ft. S. & M. Ry. Co., 157 Mo. 621, 58 S. W. 32, this court upheld an ordinance of West Plains limiting the speed of trains in that city to six miles per hour as being valid and reasonable and held its violation to constitute negligence *per se*. That case, though not the first to do so,

examined the rationale of such holdings and showed that the consensus of authority is that such ordinances are but an exercise of the police powers of cities and towns in providing for the health and safety of the people. It pointed out that Bluedorn v. Missouri Pac. Ry. Co., 108 Mo. 439, 18 S. W. 1103, held "that ordinances of cities regulating the speed of railroad trains are police regulations, and that the power to regulate them need not be given in express terms, but may be implied from the power of the city to abate nuisances and provide for the general welfare." The cases of Merz v. Missouri Pac. Ry. Co., 88 Mo. 672, 1 S. W. 382, and Grube v. Missouri Pac. Ry. Co., 98 Mo. 330, 11 S. W. 736, where six-mile per hour ordinances are held reasonable, are to the same effect. But why multiply cases? There is really no contrariety of opinion. In a case so recent that it cannot be said not to apply to this day and age, Murrell v. Kansas City, St. L. & C. Railroad Co., 279 Mo. 92, 213 S. W. 964, this court refused to hold void an ordinance of a fourth class city of twenty-seven hundred inhabitants limiting the speed of trains to six miles per hour on the objection that same was "unreasonable, unconstitutional, and an *attempt to interfere with interstate commerce.*" The court there cites a long line of cases in this State upholding the validity and reasonableness of city ordinances fixing the maximum speed of railroad trains at from five or six to ten or twelve miles per hour, and says: "With this long line of decisions confronting us, sustaining six-mile ordinances, we have no disposition to declare invalid the one adopted by Higginsville in controversy here. As a police regulation it was the duty of the municipality to protect its citizens in the enjoyment of their rights, under such circumstances as are disclosed in this record." In 51 Corpus Juris. 1049, a note to the text collects the cases from all the states upholding the reasonableness of speed ordinances limiting the rate to from four to ten or twelve miles per hour.

The legislative authority is the primary judge of the necessity or reasonableness of speed regulation of railroad trains and the presumption is in favor of the ordinance. It is only where it is clearly shown that the ordinance is unreasonable and arbitrary that a court will so declare. [51 C. J. 1051; White v. Missouri, K. & T. Railroad Co., 230 Mo. 287, 306, 130 S. W. 325; Morse v. Westport, 110 Mo. 502, 509, 19 S. W. 831; Wagner v. St. Louis, 284 Mo. 410, 417, 224 S. W. 413; State ex rel. St. Louis Transfer Co. v. Clifford, 228 Mo. 194, 205, 128 S. W. 755; McGill v. City of St. Joseph (Mo. App.), 38 S. W. (2d) 725, 727; Mike Berniger Moving Co. v. O'Brien (Mo. App.), 240 S. W. 481.] There are three cases decided by our Courts of Appeals, White v. St. Louis-San Francisco Ry. Co., 44 Mo. App. 540; Zumault v. K. C. & I. Air Line, 70 Mo. App. 670, and City of Plattsburg v. Hagenbush, 98 Mo. App. 669, 73 S. W. 25, holding that an ordinance like the one in question should be held void for

unreasonableness when applied to a line of railroad running through sparsely settled farm land not laid out in lots and blocks with streets and alleys crossed by the railroad. Such, however, is not this case as Nettleton Avenue, where this accident occurred, was the fourth or fifth street from the western boundary of the city and was a paved and much traveled street. In the Jackson case, supra, this court said: "No human agency, not designed for the purpose, is so destructive of life and property, as locomotive engines and cars while running at a rapid rate of speed, and when authorized to do so by their charters, it is not only their right but it is the *duty* of cities and towns, to pass such reasonable ordinances regulating the speed of trains of cars within their corporate limits, as may be necessary for their protection, and when passed such ordinances, being police regulations, have the same force and effect that legislative acts have, upon which actions for damages sustained by reason of their violation may be maintained." [3] If, as generally held in all jurisdictions, the object and purpose of ordinances and laws limiting the speed of railroad trains in cities and over much traveled streets is to preserve the safety of the people and prevent injury to persons and property, then such reasons and purposes exist in this day and age as well as in the past. The demands of humanity should not yield to the demands of commerce. The extensive use of automobiles on city streets does not lessen but rather increases the necessity of safety at railroad crossings from fast moving trains. Besides this, the humble pedestrian and the "plowman" who "homeward plods his weary way" must not be made "the forgotten man." Competition in rapid transit cannot be fostered at the expense of safety to human life. This is a commercial age, but we have not yet reached the point where the health and safety of the people must yield to the desire for gain. The police power of the State and its municipalities must and should dominate the encroachments of commerce. We are not yet ready to abolish the State motto, *"Salus populi suprema lex esto."* We approve the ruling of the court in Weyl v. Chicago, M. & St. P. Ry. Co., 40 Minn. 350, where it said: "An ordinance of this character may restrain trade, and yet be necessary and reasonable as a police regulation. The rapid transaction of business by the railway company may be hindered and trammelled by an ordinance controlling and regulating the rate of speed with which railway trains may be sent over and through the streets and populous portions of our towns and cities, but, when necessary for the proper protection of life and property, the celerity and dispatch with which business may be accomplished is but secondary." This whole question of the reasonableness of an ordinance like this as a police regulation, its interference with the demand for rapid travel, its interference with interstate commerce and commerce generally, and its interference with the carrying of the United States

mail, was thoroughly examined and a wealth of authorities cited in Chicago & Alton Ry. Co. v. Carlinville, 200 Ill. 314, 60 L. R. A. 391, with the same result we have reached.

██ It is fair to say that defendant in presenting the case here does not stress the proposition that the ordinance is void for being unreasonable, arbitrary, and in restraint of commerce or travel by railroad, though such was the trial court's ruling, but does stress the other objection that the ordinance in question is discriminatory, a special law, and unfair in that it is applicable to steam railroads only and not to motor busses carrying passengers and freight for hire. The ordinance is attacked here as being violative of Subsection 32 of Section 53, Article IV, of our State Constitution, which provides:

"The General Assembly shall not pass any local or special law: . . . (32) Legalizing the unauthorized or invalid acts of any officer or agent of the State, or of any county or municipality thereof. In all other cases where a general law can be made applicable, no local or special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject."

It is reasoned that this ordinance is a special law in that it singles out railroad cars propelled by steam, and those operating same, and regulates the speed thereof, when a general law applicable to motor busses and perhaps electric street cars (though this is not suggested) could be made applicable. The argument naturally leads to and includes the constitutionality of the ordinance as being a violation of the constitutional guarantee, both State and national, giving to all alike the equal protection of the laws. [U. S. Constitution, Amend. XIV.] We will concede, as defendant contends, that these constitutional provisions apply to city ordinances as well as to state laws. [City of Springfield v. Smith, 322 Mo. 1129, 1136, 19 S. W. (2d) 1; Ex parte Lerner, 281 Mo. 18, 218 S. W. 331; City of Hannibal v. Missouri & K. Tel. Co., 31 Mo. App. 23.] ██ The plaintiff points out, however, that no constitutional question was raised in the trial court either by the pleadings, the objections to the introduction of the ordinance in evidence or the court's ruling thereon. A reading of the record shows this to be true. Nowhere is a constitutional question mentioned except in the briefs filed here. We have ruled many times that constitutional questions, to be a subject of review here, must be raised and ruled on in the trial court and cannot be raised for the first time in this court except in the rare cases in which it can be said that the constitutional question necessarily inheres in the cause. [Schildnecht v. Joplin, 327 Mo. 126, 35 S. W. (2d) 35; Ex parte Bass, 328 Mo. 195, 40 S. W. (2d) 457; State ex rel. Tadlock v. Mooneyham, 296 Mo. 421, 425, 247 S. W. 163; City of St. Joseph

v. Georgetown Lodge No. 627, I. O. O. F. (Mo.), 8 S. W. (2d) 979, 981; Strother v. Atchison. T. & S. F. Ry. Co., 274 Mo. 272, 203 S. W. 207; Newman v. John Hancock Mut. Life Ins. Co., 316 Mo. 454, 290 S. W. 133; Jacobs v. Cauthorn, 293 Mo. 154, 160, 238 S. W. 443.]

The only reason, therefore, for noticing the constitutional question suggested is that as this case must be reversed and remanded for new trial, the defendant will, otherwise, probably on trial anew raise and present the same question in a proper manner for decision. For that reason we will consider the constitutionality of the ordinance on the grounds now urged.

In so doing we must start with the rule of law that, as against the claim that the speed ordinance is discriminatory and a special law, where a general law is applicable, because not applying to motor busses carrying passengers for hire operated through and on the streets of Springfield, the presumption is that the ordinance is constitutional; that it devolves on defendant in assailing its constitutionality to clearly demonstrate that fact, and if there be a reasonable doubt on that question. the doubt must be resolved in favor of its being constitutional. [City of Springfield v. Smith, 322 Mo. 1129, 1137, 19 S. W. (2d) 1.] In Humes v. Missouri Pac. Ry. Co., 82 Mo. 221, 232, this court, in considering this same objection to the constitutionality of a statute applying only to railroads, said: "Therefore, and wisely, the courts before pronouncing a statute void, demand to be satisfied beyond a reasonable doubt of its vice. So this court has announced. 'Both upon principle and authority the acts of the Legislature are to be presumed constitutional until the contrary is clearly shown; and it is only when they manifestly infringe on some provision of the Constitution that they can be declared void for that reason. In case of doubt every possible presumption, not directly and clearly inconsistent with the language and subject matter, is to be made in favor of the constitutionality of the act.' [State ex rel. v. Railroad Co., 48 Mo. 468; The State v. Able, 65 Mo. 357.]" This statement of the law has been quoted and approved in Hamman v. Central Coal & Coke Co., 156 Mo. 232, 242, 56 S. W. 1091, and Miners' Bank v. Clark, 252 Mo. 20, 30, 158 S. W. 597.

Furthermore, it is the generally recognized rule of law that legislative enactments which apply to or deal with a single class are not necessarily special laws or objectionable class legislation. Classes are founded on natural differences and generally one "class" differs from another "class" or there would not be different classes. The law does not make but only recognizes classes. [White v. Missouri, K. & T. Ry. Co., 230 Mo. 287, 304, 130 S. W. 325.] So it is generally held that the mere fact that an ordinance or other legislative act applies to only one class does not stamp it as an unconstitutional special law or as denying the equal protection of the laws, but quite the contrary. It is generally sufficient if the law or or-

dinance applies alike to all the individuals of the class and it need not extend to other classes where there is a fair difference and distinction, and as to this the law-making power is the primary judge, and to its decision the courts should defer unless palpably wrong. In Hamman v. Central Coal & Coke Co., 156 Mo. 232, 241, 56 S. W. 1091, in speaking of a statute applicable only to mines and miners, this court said: "'A statute which relates to persons or things, as a class, is a general law, while a statute which relates to particular persons or things of a class, is special.' [State ex rel. v. Herrmann, 75 Mo. l. c. 354; Lynch v. Murphy, 119 Mo. 163.]" And as giving the basis of the distinction, the court further said: "It is of common knowledge that no class of laborers are so much exposed to dangers as miners, and that none in proportion to the number engaged meet with so many fatal disasters, and the Legislature doubtless for that reason, in order to protect human life, and to prevent such occurrences as far as possible, thought that the necessity for increasing the maximum amount of damages over that fixed by law in other cases existed, in order to stimulate operators of such mines to all needful and proper precautions for their protection. Moreover, 'class legislation is not necessarily obnoxious to the Constitution. It is a settled construction of similar constitutional provisions that a legislative act which applies to and embraces all persons "who are or who may come into like situations and circumstances," is not partial.' [Humes v. Railroad, 82 Mo. l. c. 231.]" In the last case cited, speaking of a statute which singled out railroads and imposed double damages for killing stock on failure to fence, etc., the court said: "It is further alleged against this statute that it is partial and special because it 'is directed against railroads alone, while no other common carriers are brought within its operation.' Had the Legislature deemed it essential to the protection of human life and private property they would doubtless have extended the statute to carriers by coach and water. But as the class of property and human life, protected by this provision of the statute, is not exposed to a like peril incident to coach and water travel, the occasion and necessity for so extending the statute does not exist. Class legislation is not necessarily obnoxious to the Constitution. It is a settled construction of similar constitutional provisions that a legislative act which applies to and embraces all persons 'who are or who may come into like situations and circumstances' is not partial. . . . This character of legislation as already shown has long prevailed in this State. The courts have repeatedly recognized and sanctioned their validity, until now it would be disruptive to outlaw them." In Miners' Bank v. Clark, 252 Mo. 20, 30, 158 S. W. 597, the court said: "A statute is not special or class legislation if it apply to all alike of a given class, provided the classification thus made is not arbitrary or without a reasonable basis. [State v. Julow, 129 Mo. 163; White

v. Railroad, 230 Mo. 287, 305, 306.]'' In State v. Walsh, 136 Mo. 400, 405, 37 S. W. 1112, this court said: ''Now it is a rule of long established construction in this State, a rule so well settled that it admits no contravention, 'that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special.' [Cases cited.]'' In O'Connor v. St. Louis Transit Co., 198 Mo. 622, 97 S. W. 150, speaking of the Attorney's Lien Act, this court said: ''This act undertakes to cover a certain class of persons engaged in a particular profession. It does not undertake to select any particular person in that class, but applies to all alike who fall within the class of attorneys-at-law. The history of legislation in this State demonstrates that the lawmaking power found it essential for the purposes of legislation to divide both persons and business into separate classes, and it is now no longer an open question in the courts of this State that legislation applicable to a particular class is not violative of the constitutional provision which prohibits the enactment of special laws. . . . We have legislation in this State respecting other classes of persons, such as fellow-servants, mechanics, landlords, bankers, insurance laws and other legislation which have reference to only one line of trade or class of persons; yet, wherever these laws have been in judgment before the courts of this State they have been held constitutional and valid.'' White v. Railroad, supra, states the law thus: ''If there is reason why a law should be made to apply to a particular class the law-making department of the State government has authority to make it unless it is otherwise prohibited by the Constitution. [Cases cited.] . . . If the reasons for class legislation as above discussed are observed the Legislature might recognize the existence of a class within a class; for a class within a class is but a class, and it may be as well marked as the larger class out of which it is formed—and if the statute embraces all those who come within its reason it is not obnoxious to the Constitution.''

It will readily be seen that the law-making power of this State has long recognized that railroads constitute such a separate and distinct class of carriers of passengers and freight as to justify legislation regulating them as such without including other carriers in such regulations. This court has uniformly held such legislation valid as against objections like the present to their constitutionality. When we remember that the ordinance is an exercise of police power to protect the health and safety of the people and prevent injury to persons and property, especially at street crossings, it can be readily seen why the same is leveled at railroad trains rather than motor busses. Railroads are in the nature of things a natural class. That fast moving railroad trains are highly dangerous to persons and property attempting to cross the railroad track is within common experience and this danger is much increased where there is con-

gested traffic. There is a difference between motor busses and railroad trains justifying their being put in a separate class in speed regulations, in these respects: A train must travel a well defined path marked by two steel rails. The only possible way a train could avoid striking anything that might be in its path would be to stop, and if the train was traveling at a speed beyond that permitted by the ordinance in question the chances of stopping are lessened. Railroad trains are generally much longer and heavier than motor busses, more difficult to control as to speed, and require a much longer space and time to stop or the speed be reduced. The motor bus or truck is not limited in its line of travel except by the width of the street or the congestion of traffic. It is not limited to the mere checking of the speed or stopping to avoid striking that which might be in its path, but can swerve in any direction, and if necessary to save human life can even leave the street entirely. A train runs on schedule time without interference from other traffic. It owns its own road, on which no one can intrude. The motor bus or truck must share its road with all kinds of vehicles, with ownership to the road in the public. A speed of ten miles per hour in a city by all carrier busses and trucks might block traffic. The length, weight, vibration, and necessary noise of a train, together with the cinders, smoke and dirt that accompanies a fast moving train are all enemies of public safety and comfort, none of which, to the same extent at least, accompanys the operation of motor busses or trucks. All these are subjects for police regulation and justify the classification made by this ordinance. Certainly there is as much difference between a motor bus and a railroad train as between an electric street car and such train, and in Indianapolis Union Ry. Co. v. Waddington (Ind.), 82 N. E. 1030, the Supreme Court of Indiana refused to hold a speed ordinance void because applying to railroad trains and not to street cars, saying: "The fact that such cars are more readily controlled than steam cars affords just ground for distinguishing between them in respect to speed." The record shows that the city of Springfield does regulate the travel of motor busses and automobiles on its streets by limiting the speed of same to twenty miles per hour, and also requires same to come to a full stop before proceeding to cross any railroad track. If any of such ordinances are void for unreasonableness, it is this last one.

Defendant cites and relies on City of Springfield v. Smith, 322 Mo. 1129, 19 S. W. (2d) 1, as announcing a new, if not different, rule in regard to city ordinances being unconstitutional in being special laws when general laws can be made applicable, and contends that under the rule there laid down this ordinance must be held void. It is also claimed that this precise objection that a special law is invalid when a general law can be made applicable (Subsec. 32 of Sec. 53, Art. IV, Constitution of Missouri) has never been presented or passed

on by this court as applied to speed ordinances governing railroad trains. A reading of the cases, however, shows that this question has been presented and ruled on in reference to laws and ordinances directed exclusively against railroads as a class and not covering other common carriers. [Humes v. Railroad, supra; White v. Railroad, supra.] This Smith case professes to follow the well-established rules of law in reference to what are and what are not special laws as distinguished from general laws in a constitutional sense. In refference to a Sunday ordinance it held that there is no substantial distinction between moving picture shows and circuses, boxing contests, etc., and that all such are the individuals within a single class, public amusements. The Smith case deals with a widely different subject than here presented and it is not in conflict with what we are here deciding. The same is true of other like cases cited by defendant.

We have no hesitation in holding that the trial court erred in rejecting the city ordinance limiting the rate of speed of railroad cars in the city of Springfield as bearing on defendant's negligence.

Defendant urges, however, that even if it was error to exclude the speed ordinance mentioned, the evidence shows the deceased to have been guilty of contributory negligence, barring recovery, and that such error is therefore harmless. We will readily agree that if the deceased was under the evidence conclusively shown to have been negligent in heedlessly going onto the crossing in front of a rapidly moving train in plain view, then plaintiff cannot recover regardless of defendant's negligence as to the speed of the train. Under facts conclusively showing the deceased's negligence, absent facts bringing the case within the humanitarian rule, the court should have sustained a demurrer to the evidence and directed a verdict for defendant regardless of its negligence. Nichols v. C. & A. Railroad Co. (Mo. App.), 250 S. W. 627, 628, where the court said: ''Plaintiff was contributorily negligent as a matter of law, and this defeats his recovery regardless of whether defendant was negligent or not.'' [Morrow v. Hines (Mo. App.), 233 S. W. 493; Giardina v. St. Louis & M. Railroad Co., 185 Mo. 330, 334, 84 S. W. 928; Green v. Missouri Pac. Ry. Co., 192 Mo. 131, 144, 90 S. W. 805; Smith v. St. Louis Southwestern Ry. Co. (Mo. App.), 31 S. W. (2d) 105; Burge v. Wabash Ry. Co., 244 Mo. 76, 94, 148 S. W. 925.]

The defendant, however, largely overlooks the fact that the deceased was not the driver of the automobile, but only a guest, and argues the question of contributory negligence against the deceased, Ella Rose, much the same as against the driver of the automobile, Albert M. Powell. The instructions given for defendant, Nos. 8 and 9, are faulty in this respect. The jury should not be instructed that a guest riding in an automobile approaching a railroad crossing is required to use care and vigilance to discover an approaching train in order to warn the driver of the danger and is guilty of con-

tributory negligence if such guest could by reasonable care have discovered the danger and warned the driver thereof, but failed to do so. It was for the jury to say whether plaintiff did in this respect what a reasonably prudent person would have done under the same or similar circumstances. The evidence in the record is rather meager on this point, but we gather therefrom that Powell also owned the car. It is not shown how or why the deceased came to be riding with Powell or where they came from or where they were going. In any event, however, it is shown and conceded that the relation of driver and owner of the car and that of guest existed between Powell and Ella Rose, whose administratrix brings this suit. We need not examine the evidence at length to determine whether there is any evidence from which a jury might find Powell not guilty of contributory negligence. Assuming that Powell was conclusively negligent in heedlessly driving his automobile at fifteen to twenty miles per hour onto the railroad track in broad daylight in front of a fast moving train, which was in plain view, and which others having no better advantage both saw and heard, as well as not stopping before entering on the crossing as required by city ordinance, yet the negligence of the driver cannot without more be imputed to the guest. [State ex rel. Hines v. Bland (Mo.), 237 S. W. 1018, 1020.] Mere proof of the driver's negligence in the respects stated does not prove negligence of the guest. In fact, the driver, as well as a third party, may be liable to the guest for negligence. [Kaley v. Huntley, 333 Mo. 771, 62 S. W. (2d) 21, 24.] Contributory negligence is an affirmative defense, the burden of proving which is on the defendant, and it is not enough for him to prove the driver's negligence, but he must go further and prove facts which make the guest negligent also or which make the guest responsible for the driver's negligence. In the recent case of Lynch v. Missouri-Kansas-Texas Railroad Co., 333 Mo. 89, 95, 61 S. W. (2d) 918, 920, this court considered this question and said: "Appellants cite cases in which pedestrians in the daytime were killed or injured when they walked in front of nearby trains at points where visibility was not hindered by curves or obstacles (cases cited), and cases in which drivers of automobiles were the victims of collisions caused by their own act in driving upon tracks when they might have seen from a point of safety an approaching train. [Cases cited.] But negligence of a guest of the driver of an automobile cannot be predicated upon the law of these cases. Even if we should assume, solely for the purposes of this case, that Bergwin, the driver of the car, was negligent as a matter of law, we could not impute his negligence to respondent unless the relation between Bergwin and respondent, Lynch, were such that the acts and omissions of Bergwin were the acts and omissions of Lynch, or unless Lynch *expressly sanctioned what Bergwin did or failed to do.* [Boland v. St. Louis-San Francisco Ry. Co.

(Mo.), 284 S. W. 141, citing Stotler v. Railroad, 200 Mo. 107, 98 S. W. 509.] But Bergwin was not the agent or servant of Lynch, who was merely a guest of Bergwin. There is no evidence of *express authorization* by Lynch of the course of conduct of Bergwin in driving his car upon the main track. Therefore, the acts of Bergwin were not attributable to Lynch as a matter of law." To the same effect is Byars v. Wabash Railroad Co., 161 Mo. App. 692, 141 S. W. 926, where the court said: "Byars was the mere guest of Carter. Whether Carter was negligent we do not at this time decide. If he was negligent, his negligence is not to be imputed to Byars as his guest or passenger. To hold that it was, 'would be . . . to make an innocent person answerable for the wrong act of another over whom he has and exercises no control, and who is neither his servant nor his agent.' [Cases cited.]" And in Stotler v. Chicago & A. Ry. Co., 200 Mo. 107, 147, 98 S. W. 509, this is said: "The act in question was not hers, but if she actively participated in that act, or is responsible therefor, she ought not to recover. If she did not actively participate therein, and is not responsible therefor, then there is no independent cause intervening between defendants' negligence and the injury, and that injury should be referred to defendants' negligence alone." In Boland v. St. Louis-San Francisco Ry. Co. (Mo.), 284 S. W. 141, 144, speaking of the liability of a guest for the negligence of the driver, this court said: "She was merely his guest. It is entirely clear therefore that no act of his was attributable to her as a matter of law. If she expressly approved or sanctioned anything he did there is not the slightest intimation of it in the evidence. On the whole it is fairly inferable that she assumed no responsibility of any kind, but left the control and management of the machine entirely to the driver. . . . Yet it is a matter of common knowledge that under ordinary circumstances such occupants do largely rely upon the driver, who has the exclusive control and management of the vehicle, exercising the required degree of care, and for that reason courts are not justified in adopting a hard and fast rule that they are guilty of negligence in doing so. . . . She evidently assumed that the driver would take those precautions. Was she negligent in so doing? Was she negligent in not protesting against his starting across the track before they could obtain an unobstructed view to the west? These, we think, are questions for the jury." [See, also, Petersen v. St. Louis Transit Co., 199 Mo. 331, 341, 97 S. W. 860.]

As we have said, both the guest, for whose death this action is prosecuted, and the driver of the car were killed instantly and we are without the evidence of either, so that the evidence as to the acts and conduct of the deceased is meager. About all that any witness said was that they both appeared to be looking straight ahead and not toward the coming train. There is no conclusive evidence as to

whether this deceased did or did not warn the driver of the danger or protest against his negligent act. Moreover, under all the facts here, this deceased is entitled to the presumption of having used due care. That presumption is rebuttable and so the court instructed the jury at defendant's request by Instruction No. 8. ''When the man is dead and there is no evidence as to his conduct at the time of the accident, the law through the very necessity of the case indulges the presumption of due care.'' [Burge v. Wabash Ry. Co., 244 Mo. 76, 95, 148 S. W. 925. See, also, Byars v. Wabash Ry. Co., 161 Mo. App. 692, 704, 141 S. W. 926; Stotler v. Chicago & A. Ry. Co., 200 Mo. 107, 146, 98 S. W. 509; Garrett v. Missouri Pac. Ry. Co., 216 Mo. App. 21, 267 S. W. 91; Pryor v. Payne, 304 Mo. 560, 582, 263 S. W. 982; McKenzie v. United Rys. Co., 216 Mo. 1, 115 S. W. 13.] At most the question of the deceased's contributory negligence is a question for the jury.

The result is that the judgment is reversed and the cause remanded. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All the judges concur.